**MORGAN, LEWIS & BOCKIUS LLP**
Susan Baker Manning, CA Bar No. 197350
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:   +1.202.739.3000
Fax:   +1.202.739.3001
susan.manning@morganlewis.com

Lisa R. Weddle, CA Bar No. 259050
Kent W. Kraushaar, CA Bar No. 307536
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501
lisa.weddle@morganlewis.com
kent.kraushaar@morganlewis.com

Attorneys for Plaintiffs
A.F.P and J.F.C.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.F.P. and J.F.C., | Case No. 1:21-cv-00780-DAD-EPG |
| Plaintiffs, | **PLAINTIFFS A.F.P. AND J.F.C.'S OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TRANSFER VENUE** |
| vs. | |
| UNITED STATES OF AMERICA, | DATE:   March 15, 2022 |
| Defendant. | TIME:   9:30 a.m. |
| | COURT: Hon. Dale A. Drozd |
| | Courtroom 5 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

III. ARGUMENT .................................................................................................................... 3

    A.  Venue Is Proper in this District—Where Plaintiffs Live—and the Government Does Not Present the "Strong Grounds" Required to Overcome Plaintiffs' Choice of Venue .................................................................... 3

        1.  Plaintiffs' Choice of Forum Is Entitled to Deference ................................. 5

            a.  As Residents of the Eastern District of California, Plaintiffs' Choice to File Suit at Home Should Be Afforded Substantial Deference ........................................................ 5

            b.  The Vast Disparity Between the Parties' Resources Further Supports Venue in the Eastern District of California ................................................................................................ 6

        2.  The Balance of the Remaining Factors Does Not Support Transfer Under Section 1404(a) ................................................................. 7

            a.  The Government Has Not Shown that Convenience of the Witnesses Weighs in Favor of Transfer ............................... 7

            b.  The Remaining *Jones* Factors Favor Plaintiffs' Chosen Venue or Are Neutral ........................................................ 9

        3.  The Public Interest Factors Do Not Support Transfer Either .................... 11

IV. CONCLUSION ............................................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*800–Flowers, Inc. v. Intercontinental Florist, Inc.*,
   860 F. Supp. 128 (S.D.N.Y. 1994)..................................................................................6

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
   169 F. Supp. 3d 1079 (D. Or. 2016)...............................................................................5

*Alvarado v. United States*,
   No. CV 16-5028, 2017 WL 2303758 (D.N.J. May 25, 2017) ...........................4, 5, 6, 9

*Amazon.com v. Cendant Corp.*,
   404 F. Supp. 2d 1256 (W.D. Wash. 2005).....................................................................6

*Berman v. Informix Corp.*,
   30 F. Supp. 2d 653 (S.D.N.Y. 1998)..............................................................................5

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*,
   No. CV 17-6491 FMO (JCx), 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ............11

*Commodity Futures Trading Comm'n v. Savage*,
   611 F.2d 270 (9th Cir. 1979)..........................................................................................4

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986)......................................................................................2, 4

*Devaux-Spitzley v. Prudential Ins. Co. of Am.*,
   No. 18-cv-04436-JST, 2019 WL 935137 (N.D. Cal. Feb. 26, 2019)..............................9

*Doe v. United States*,
   No. 3:16-CV-0856, 2017 WL 4864850 (M.D. Tenn. Oct. 26, 2017) ..................4, 6, 9

*Fleming v. Matco Tools Corp.*,
   384 F. Supp. 3d 1124 (N.D. Cal. 2019) .........................................................................9

*Flores v. United States*,
   142 F. Supp. 3d 279 (E.D.N.Y. 2015) ...................................................................5, 6, 9

*Getz v. Boeing Co.*,
   547 F. Supp. 2d 1080 (N.D. Cal. 2008) .........................................................................8

*Hansen v. Combined Transp., Inc.*,
   No. C13-1298RSL, 2013 WL 5969863 (W.D. Wash. Nov. 7, 2013).............................6

*Johnson v. Proline Concrete Tools, Inc.*,
   No. CIV. 08-909 LKK/GGH, 2008 WL 3154731 (E.D. Cal. Aug. 4, 2008) .................2

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495, 498 (9th Cir. 2000)..............................................................................3, 4

*Microsoft Corp. v. Mai*,
   No. C09-474RAJ, 2009 WL 10678620 (W.D. Wash. Nov. 2, 2009) .............................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

*Nordquist v. Blackham*,
  No. C06-5433 FDB, 2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) .................................. 6

*Partanen v. W. United States Pipe Band Ass'n*,
  No. 121CV00588NONEBAM, 2021 WL 3472242 (E.D. Cal. Aug. 6, 2021) ........................... 5

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................................................ 4

*Pizana v. SanMedica Int'l LLC*,
  No. 118CV00644DADSKO, 2020 WL 469336 (E.D. Cal. Jan. 29, 2020) ......................... 2, 7, 9

*Rowen v. Soundview Commc'ns, Inc.*,
  No. 14-cv-05530-WHO, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ................................. 9, 10

*Safarian v. Maserati N. Am., Inc.*,
  559 F. Supp. 2d 1068 (C.D. Cal. 2008) ................................................................................. 4

*SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*,
  No. CV 09-0291 JSW, 2009 WL 981233 (N.D. Cal. Apr. 13, 2009) .................................... 10

*Stewart Org. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ............................................................................................................... 3

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) ............................................................................................... 11

*Travel Tags, Inc. v. UV Color, Inc.*,
  690 F. Supp. 2d 785 (D. Minn. 2010) ................................................................................. 11

*Trevino v. Golden State FC, LLC*,
  No. 117CV01300DADBAM, 2019 WL 6790763 (E.D. Cal. Dec. 12, 2019) ....................... 11

*Williams v. Robert Half Int'l Inc.*,
  No. 4:20-CV-03989-KAW, 2020 WL 12655622 (N.D. Cal. Sept. 18, 2020) ...................... 11

*Wordtech Sys. Inc. v. Integrated Network Sols., Corp.*,
  No. 2:04-CV-01971-TLN, 2014 WL 2987662 (E.D. Cal. July 1, 2014) ............................... 4

*Xiu Feng Li v. Hock*,
  371 F. App'x 171 (2d Cir. 2010) .......................................................................................... 4

**Federal Statutes**

28 U.S.C. § 1402(b) .................................................................................................................. 5

28 U.S.C. § 1404(a) ........................................................................................................... 2, 3, 4

## I. INTRODUCTION

While the United States government claims that it "has denounced the prior practice of separating children from their families at the United States–Mexico border and 'condemn[ed] the human tragedy that occurred [because of] the Zero-Tolerance Policy'" (Mot. to Transfer [ECF 15-1] at 1), its actions here speak louder than its empty words. As evidenced by the government's motion to transfer this case to the Southern District of Texas—nearly 1,500 miles from Plaintiffs' home near Fresno, California—the current administration has no intention of righting the wrongs done to Plaintiffs and thousands of other individuals who suffered similar cruelty because of the Trump administration's draconian border policies. Rather, the United States government has indicated its intent to pursue every legal roadblock and procedural technicality to stifle Plaintiffs' voice and prevent their recovery. Fortunately, the government's gambit to transfer this case to a venue that will make it difficult or impossible for Plaintiffs to litigate the case can and should be rejected.

Rather than advancing the "interest of justice," the government's request to transfer this action to the Southern District of Texas would result in injustice and hardship to Plaintiffs far outweighing any purported "convenience" that may result from transfer. While the government has virtually limitless resources and can ably defend itself in any court in the United States, including this one, Plaintiffs do not have the same resources or ability. They are an indigent father and son who are seeking asylum in the United States due to relentless persecution in their native Honduras. They left their home and possessions behind to come to the United States in search of safety. Instead, they were met with contempt and inhumane treatment. Plaintiffs simply do not have the resources to litigate this action halfway across the country, and an order transferring this case to the Southern District of Texas would severely hamper (if not eliminate) their ability to hold the government accountable for cruelly separating a father and son for fifteen months.

In its motion, the government primarily argues that Texas is a more "convenient" venue for this action because that is where it committed many (but not all) of the inhumane acts that give rise to this lawsuit, and it is where many of the federal agents, employees, and contractors who perpetuated these deliberately inflicted harms are purportedly located. Yet, the government only

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

1

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

specifically identifies two witnesses who would purportedly be inconvenienced by a case in California. The government also ignores the fact that witnesses in this case are located throughout the country—in California, Texas, New York, Washington, D.C., and beyond.

As such, the government's motion begs one question: more convenient for who? Other than the fact that they suffered from the government's willful and deliberate cruelty in Texas, Plaintiffs have no connection to that state. Plaintiffs, instead, have continuously resided in California since March 2019, and specifically in the Eastern District of California since approximately August 2020. As seasonal agricultural workers, Plaintiffs lack the resources to travel to Texas to litigate their claims. The United States government has no similar limitations and can easily defend itself in California. Thus, while the government might regard it as more "convenient" to litigate this case in Texas, it would be impossible for Plaintiffs.

The discretionary venue statue, 28 U.S.C. § 1404(a), is not a vehicle to "merely shift the inconvenience from defendant to plaintiff." *Johnson v. Proline Concrete Tools, Inc.*, No. CIV. 08-909 LKK/GGH, 2008 WL 3154731, at *4 (E.D. Cal. Aug. 4, 2008) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Rather, it is the government's burden to "make a strong showing of inconvenience to warrant upsetting [Plaintiffs'] choice of forum." *Pizana v. SanMedica Int'l LLC*, No. 118CV00644DADSKO, 2020 WL 469336, at *2 (E.D. Cal. Jan. 29, 2020) (Drozd, J.) (quoting *Decker Coal Co.*, 805 F.2d at 843). The government has not and cannot do so here.

## II.  FACTUAL BACKGROUND

This case arises from the physical and emotional trauma that Plaintiffs—and thousands of other asylum seekers—experienced at the hands of federal agents and employees under the Trump administration's so-called "zero tolerance" border policies. Compl. at ¶¶ 1, 29–33. Under these policies, the United States government forcibly separated Plaintiffs, a father and son, under the pretext of A.F.P.'s prosecution for the misdemeanor crime of "illegal entry," even though A.F.P. was sentenced to "time served" and returned to the custody of the U.S. Border Patrol that same day. *Id.* at ¶¶ 26–28, 34–36; *see also* Declaration of Brian S. Hastings (ECF 15-6) at ¶¶ 10–11. A.F.P. was deported without his son, and Plaintiffs were ultimately separated for *fifteen months*. Compl.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

at ¶¶ 24–58. There was no need or lawful reason for Plaintiffs to be separated at all. Nor was their separation an accident. Plaintiffs were the victims of an intentional and concerted plan, developed at the highest levels of the federal government, to inflict extreme emotional distress on thousands of individuals who crossed the border—intentional cruelty that was intended to deter other parents and children from seeking asylum in the United States. Compl. at ¶ 1–2, 29–33.

Plaintiffs were eventually reunited in California in March 2019. *Id.* at ¶¶ 7, 56–58; Declaration of James De La Cruz (ECF 15-4) at ¶ 5. Plaintiffs, and their remaining family members, have lived continuously in California since their reunification. Declaration of A.F.P. ("A.F.P. Decl.") at ¶ 2; Declaration of J.F.C. ("J.F.C. Decl.") at ¶ 2. Around August 2020, Plaintiffs moved to Reedley, California, which is approximately 25 miles south of Fresno, and they have no intention of leaving. A.F.P. Decl. at ¶ 3–4; J.F.C. Decl. at ¶ 3–4. Plaintiffs are seasonal agricultural workers who make minimal wages and have virtually zero savings. A.F.P. Decl. at ¶ 6–7; J.F.C. Decl. at ¶ 6–7. Plaintiffs do not have the money or resources to go to Texas to litigate against the federal government. A.F.P. Decl. at ¶ 8–9; J.F.C. Decl. at ¶ 8–9. As such, on May 14, 2021, Plaintiffs filed this action in the Eastern District of California, their home venue, with the assistance of pro bono counsel. *See generally* Compl.

### III.  ARGUMENT

**A.  Venue Is Proper in this District—Where Plaintiffs Live—and the Government Does Not Present the "Strong Grounds" Required to Overcome Plaintiffs' Choice of Venue**

The government's motion concedes, as it must, that venue is proper in the Eastern District of California because Plaintiffs reside and are domiciled in this district. As such, the government moves to transfer this action under the discretionary venue transfer statue, 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Section 1404 requires a district court to consider "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In exercising discretion, courts consider the following factors:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. In addition to these "[p]rivate factors," courts may also look to certain public factors, including, as relevant here, "the local interest in having localized controversies decided at home." *Decker Coal Co.*, 805 F.2d at 843 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The moving party—in this case, the government—has the burden of demonstrating that a discretionary transfer is warranted. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). "Courts are generally hesitant to upset a plaintiff's choice of venue, and 'unless the balance of factors is **strongly** in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed.'" *Wordtech Sys. Inc. v. Integrated Network Sols., Corp.*, No. 2:04-CV-01971-TLN, 2014 WL 2987662, at *5 (E.D. Cal. July 1, 2014) (citation omitted) (emphasis added). As such, in seeking transfer under Section 1404(a), "the moving party has the burden to present 'strong grounds' for transferring the action." *Id.* (citing *Safarian v. Maserati N. Am.*, Inc., 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008)); *see also Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (holding that transfer under Section 1404(a) is disfavored "[a]bsent a clear and convincing showing that the balance of convenience strongly favors an alternate forum").

Here, as Plaintiffs explain below, most of the factors weigh in heavily in favor of continuing this case in California or, at the very least, are neutral. As a result, the government fails to present sufficient grounds, let alone "strong grounds," for transfer. Notably, several other courts across the country have ruled against similar requests to transfer FTCA claims involving ICE and CBP's mistreatment of asylum seekers along the southern border. *See, e.g., Doe v. United States*, No. 3:16-CV-0856, 2017 WL 4864850, at *2–3 (M.D. Tenn. Oct. 26, 2017); *Alvarado v. United States*,

No. CV 16-5028, 2017 WL 2303758, at *6–8 (D.N.J. May 25, 2017); *Flores v. United States*, 142 F. Supp. 3d 279, 287–91 (E.D.N.Y. 2015).[1]  For the reasons below, this Court should do the same.

### 1. Plaintiffs' Choice of Forum Is Entitled to Deference

#### a. As Residents of the Eastern District of California, Plaintiffs' Choice to File Suit at Home Should Be Afforded Substantial Deference

"Courts afford a plaintiff's choice of forum significant deference." *Partanen v. W. United States Pipe Band Ass'n*, No. 121CV00588NONEBAM, 2021 WL 3472242, at *5 (E.D. Cal. Aug. 6, 2021).  Further, a "plaintiff's choice of forum is especially given deference where the plaintiff is a resident of the forum in which the action is brought." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1096 (D. Or. 2016) (internal quotations and citation omitted); *see also Microsoft Corp. v. Mai*, No. C09-474RAJ, 2009 WL 10678620, at *4 (W.D. Wash. Nov. 2, 2009) (this factor "weighs heavily against transfer" where, as here, plaintiff[s'] "choice . . . is [their] home forum"); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) ("the plaintiff's choice is generally accorded more deference where . . . the plaintiff is a resident of the forum district").

Although Plaintiffs theoretically could have brought this action in Texas (where the government detained them in abhorrent conditions and forcibly separated them) or New York (where the government forced J.F.C. to live apart from his family for fifteen months and negligently inflicted severe physical injury to his ear) or Washington, D.C. (where the government created and directed its family separation policy), there is no reason why they should be required to litigate a thousand or more miles from home.  Plaintiffs are residents of the Eastern District of California and have chosen to litigate this action at home, as is their right under the FTCA.

The government contends that Plaintiff's choice of venue should be given less weight because the actions giving rise to their FTCA claims occurred in Texas and New York, not

---

[1] It is also noteworthy that the government is inconsistent about its own position regarding the transfer of FTCA claims arising out of family separations.  In other family separation cases, the United States has chosen not to seek transfer, even where the case was brought in a district other than the one where the underlying events occurred.  *See*, *e.g.*, *R.Y.M.R. v. United States*, No. 20-cv-23598 (S.D. Fl.) (family separated in California filed FTCA suit in their home district).  This suggests that the government's position is strategic, not principled, and certainly not driven by the considerations it highlights as a reason to transfer this case.  Ultimately, Congress chose to allow FTCA plaintiffs to file their lawsuits where they reside, *see* 28 U.S.C. § 1402(b), and that is what A.F.P. and J.F.C. have chosen to do here.

California. Mot. to Transfer (ECF 15-1) at 13–14. However, the circumstances at issue in each case the government cites for this proposition are distinguishable. *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256 (W.D. Wash. 2005) (plaintiff was one of the largest companies in the world suing other large corporations for patent infringement); *Hansen v. Combined Transp., Inc.*, No. C13-1298RSL, 2013 WL 5969863 (W.D. Wash. Nov. 7, 2013) (plaintiff knowingly engaged in employment with the defendant in the next state over); *Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) (suit arising out of sale of business in transferee district where the plaintiff formerly resided and the defendant still remained). None of these cases on which the government relies bears any resemblance to this action, which involves an indigent father and son suing the United States government in their home forum. As discussed below, this is of critical importance in assessing the weight to be accorded to Plaintiffs' chosen venue.

    **b. The Vast Disparity Between the Parties' Resources Further Supports Venue in the Eastern District of California**

The importance of Plaintiffs' choice to pursue this case in their home forum is heightened when considering the relative means of the parties. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation," or in this case, the federal government, "the court may consider the relative means of the parties in determining where a case should proceed." *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Doe*, 2017 WL 4864850, at *2 ("there is a significant disparity in the relative means of the parties, and [thus] this factor weighs against the requested transfer"); *Alvarado*, 2017 WL 2303758, at *6 ("a transfer would impose such a financial burden on Plaintiffs that it would indeed shift the burden of the case from the Government to Plaintiffs"); *Flores*, 142 F. Supp. 3d at 289 (similar).

Plaintiffs chose to file their FTCA claims in the Eastern District of California not for their own convenience, but out of necessity. This is because maintaining a lawsuit in virtually any other district (especially one 1,500 miles away) likely would be impossible for them. Plaintiffs are seasonal agricultural workers who earn minimal wages. A.F.P. Decl. at ¶ 6; J.F.C. Decl. at ¶ 6. What little money they do earn goes towards their daily needs. A.F.P. Decl. at ¶ 7; J.F.C. Decl. at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

¶ 7. While Plaintiffs have pro bono counsel, there are hard costs—such as travel, lodging, and food—they would have to incur to try this case in Texas. Plaintiffs simply do not have the means to absorb these costs and a trial in Texas would be prohibitive. A.F.P. Decl. at ¶ 8; J.F.C. Decl. at ¶ 8. Even if Plaintiffs could somehow afford plane tickets and hotel rooms for a trial in Texas (they cannot), they also would be forced to spend significant time away from work, which would further exacerbate their already tenuous financial situation. A.F.P. Decl. at ¶ 9; J.F.C. Decl. at ¶ 9. The United States government, on the other hand, has virtually limitless resources and is far better positioned to absorb the costs of litigation than Plaintiffs.

Thus, Plaintiffs' choice of their home forum—which is, practically speaking, the only forum where they can litigate this case—weighs heavily against transfer, and it is the government's burden to present "strong grounds" for transferring this action to Texas. As further discussed below, the government does not meet this heavy burden and fails to overcome the presumption in favor of Plaintiffs' choice of their home forum.

### 2. The Balance of the Remaining Factors Does Not Support Transfer Under Section 1404(a)

Even if Plaintiffs' choice of forum were not entitled to the substantial deference that it is, the government's motion for discretionary transfer should still be denied because the remaining private and public interest factors weigh against transfer in this instance.

#### a. The Government Has Not Shown that Convenience of the Witnesses Weighs in Favor of Transfer

The government's motion rests largely on the argument that Texas would be "the most convenient forum for most witnesses, as it is where most potential witnesses with relevant knowledge live and work." Mot. to Transfer (ECF 15-1) at 11. "To demonstrate inconvenience to witnesses, the moving party should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action." *Pizana*, 2020 WL 469336, at *4 (internal quotations and citation omitted).

Here, the government specifically identifies only two individuals with relatively limited interactions with Plaintiffs as potential Texas-based witnesses who may be inconvenienced by this case remaining in California. Mot. to Transfer (ECF 15-1) at 12. These witnesses—Border Patrol

agents Juan De La Cruz and Mickel Gonzalez—apparently were involved only in A.F.P.'s initial processing and his referral for prosecution for "illegal entry." *See generally* Declaration of Juan De La Cruz (ECF 15-3); Declaration of Mickel A. Gonzalez (ECF 15-5). These agents do not state that they have any other facts pertaining to Plaintiffs' arrest, detention, or separation. The fact of A.F.P.'s prosecution is not disputed, and other witnesses will no doubt testify regarding the zero-tolerance policy of referring all such cases for prosecution. Accordingly, the overall significance of their testimony is likely limited. While the government claims to have identified "at least 18 potential rebuttal witnesses who were involved in plaintiffs' apprehension, initial custody, criminal prosecution, and removal," it fails to identify these other witnesses (much less what relevant information it believes they have or why their testimony will be important at trial). As such, the court need not even consider these as-of-yet unnamed witnesses.[2]

Also of note, in assessing the witness convenience factor, the Court should "discount[] any inconvenience to the parties' employees, whom the parties can compel to testify." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008). It appears that that majority of the witnesses the government claims to have identified remain in its employ and can be compelled to testify in California. And, while the government states that third-party government contractors in Texas may need to be called as witnesses, the government again does not specifically identify any of these contractors.

Plaintiffs do not dispute the government's general assertion that multiple Texas-based witnesses will likely be called to testify in this case. That much is clear. But the government's motion overlooks the fact that many other witnesses outside of Texas will be required to address Plaintiffs' claims. Critically, this includes Plaintiffs themselves and their family members, each of whom is in the Eastern District of California. Of near equally importance are the officials responsible for creating and directing the family separation policy, many of whom are likely located in Washington, D.C. Lastly, various individuals will be required to testify about J.F.C.'s treatment

---

[2] And, while the location of witnesses is an important factor for the Court to consider, "'[s]heer numbers of witnesses will not decide which way the convenience factor tips.'" *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 793 (D. Minn. 2010) (quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997)).

while separated from his family in New York.  This dispersion of witnesses simply underscores that this case has no obvious place where most witnesses reside.

It is well established that courts must "be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs . . . ." *Pizana*, 2020 WL 469336, at *4 (quoting *Devaux-Spitzley v. Prudential Ins. Co. of Am.*, No. 18-cv-04436-JST, 2019 WL 935137, at *4 (N.D. Cal. Feb. 26, 2019)).  This is especially so where there is great disparity between the means of the parties. *Id.*  Here, transferring this action to Texas would only shift the burden of any witness travel from the government's witnesses—who are dispersed throughout the entire country—to Plaintiffs.  Even if the court were permitted to do so, shifting the inconvenience onto Plaintiffs in this instance would be particularly egregious given Plaintiffs' lack of resources to pursue their claims in a courthouse 1,500 miles away.

Acknowledging that it would simply shift the burden, courts facing similar situations as this one—where noncitizens have sued over their mistreatment near the southern border—have declined to transfer cases. *Flores*, 142 F. Supp. 3d at 287–91 (declining to transfer case filed in New York where most events took place and government witnesses were in Texas and Florida); *Alvarado*, 2017 WL 2303758, at *6–8 (similar, involving case filed in New Jersey and events in Texas); *Doe*, 2017 WL 4864850, at *2–3 (similar, involving case filed in Tennessee and events in Texas).

Based on the foregoing, the witness convenience factor does not weigh in favor of transfer and, if anything, is neutral.

### b. The Remaining *Jones* Factors Favor Plaintiffs' Chosen Venue or Are Neutral

The remaining *Jones* factors similarly disfavor transfer or are neutral.

*Jones* factor one, which relates to the location of agreements, has no relevance here because the parties have no contract.

*Jones* factor two regarding the courts' respective familiarity with the law is of no moment because "federal judges routinely apply the law of other states than the one in which they sit." *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1136 (N.D. Cal. 2019); *accord Rowen v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER

*Soundview Commc'ns, Inc.*, No. 14-cv-05530-WHO, 2015 WL 899294, at *7 (N.D. Cal. Mar. 2, 2015). In any event, the state law at issue—basic tort law—is not unusually complicated. This factor is neutral.

*Jones* factor four, dealing with the parties' contacts with the forum clearly favors Plaintiffs because they live and work in the Eastern District of California. The government, on the other hand, has substantial contacts in every judicial district in this nation, including this one.

*Jones* factor five, which addresses the contacts between the cause of action and the forum, only slightly favors transfer. But for the government's zero tolerance policy resulting in their detention in inhumane conditions and fifteen-month separation, Plaintiffs' only contact with Texas would have been that they entered the United States there. Moreover, the conduct giving rise to Plaintiffs' FTCA claims did not occur solely in Texas. The government's development and direction of the family separation policy occurred at the highest levels of the government in Washington, D.C. Compl. at ¶¶ 1–2, 29–33. Also, J.F.C. was separated from his family and subjected to severe physical injury at the government's hands while in New York. *Id.* at ¶¶ 6, 62–73. Lastly, while Plaintiffs' injuries occurred primarily outside of California, they still feel the physical and psychological scars from the government's actions to this day inside California.

*Jones* factor six relates to the comparative cost of litigating in each forum and does not tip the scales in favor of transfer. First, the government complains that there are likely to be numerous depositions in Texas, therefore necessitating "extensive travel by counsel." Mot. to Transfer (ECF 15-1) at 13. However, this appears to be more a complaint regarding the convenience of counsel, which is not a factor to be considered. *SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*, No. CV 09-0291 JSW, 2009 WL 981233, at *3 (N.D. Cal. Apr. 13, 2009) ("[c]onvenience of . . . counsel bears no weight in the analysis of convenience of the witnesses and parties").[3] Next, the fact that some witnesses and some evidence may be in Texas does not suggest that it would be prohibitively expensive to litigate this case in California. As to the costs of meeting with witnesses and/or traveling for depositions, this hurdle is easily dispatched when considering

---

[3] Government witnesses also can be represented by the local U.S. Attorney's Office, which makes this even more of a non-factor.

the widespread adoption of video-conferencing in the legal profession during the COVID-19 pandemic.  Further, with respect to sources of documentary proof, "in the digital age, the access to records is neutral given the portability of documents." *Williams v. Robert Half Int'l Inc.*, No. 4:20-CV-03989-KAW, 2020 WL 12655622, at *3 (N.D. Cal. Sept. 18, 2020).  Accordingly, the government's arguments regarding the costs of litigation between California and Texas are nothing more than a strawman and do not support transfer.

Lastly, *Jones* factors seven and eight, dealing with the availability of compulsory service and ease of access to proof, do not weigh in favor of transfer.  While the government states that third-party government contractors in Texas may need to be called as witnesses, the government again does not specifically identify a single witness who will refuse to testify at trial.  More importantly, even though some witnesses may be third-party contractors, the government does not claim that it cannot control its contractors, or that its contractors will refuse to comply with the discovery process.  "Absent identification of any witnesses who will testify or are unwilling to testify, the availability of compulsory processes in each district is irrelevant." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, No. CV 17-6491 FMO (JCx), 2018 WL 7297829, at *3 (C.D. Cal. Sept. 30, 2018).

### 3. The Public Interest Factors Do Not Support Transfer Either

The government argues that transfer is warranted due to over-congestion of the courts in the Eastern District of California when compared to the courts of the Southern District of Texas.  While Plaintiffs do not dispute the numbers of cases in these two districts, this single case will not dramatically affect this Court's case load.  Plaintiffs' case is not a complex class action or multi-district litigation that will consume this Court with a months-long trial.  And, as this Court has previously recognized, "court congestion alone" does not "provide[] an adequate reason to transfer an action to another district." *Trevino v. Golden State FC, LLC*, No. 117CV01300DADBAM, 2019 WL 6790763, at *6 (E.D. Cal. Dec. 12, 2019) (Drozd, J.).  More importantly, the public's interest in preserving access to the courts would be harmed if this case were transferred because that would effectively prohibit Plaintiffs from litigating this case to trial.  Convenience to the court's docket cannot be a reason for depriving Plaintiffs of their only real opportunity to seek justice.

Lastly, the government claims that the Southern District of Texas has a special interest in ensuring the integrity of its own courts based on Plaintiffs' allegation that A.F.P.'s prosecution for the misdemeanor crime of "illegal entry" was a sham. It is difficult to avoid the implication that the government believes the Southern District of Texas will be biased against Plaintiffs based on their allegations, and that the government believes it will be advantaged on the merits by transfer. Furthermore, the Eastern District of California has no less an interest in protecting the integrity of the courts and, at the same time, also has an interest in protecting the rights of its own residents. Therefore, if anything, this public interest factor weighs against transfer.

## IV. <u>CONCLUSION</u>

Transferring this action to the Southern District of Texas would effectively quash Plaintiffs' ability to litigate their claims arising out of the government's despicable border policies. The government, on the other hand, has ample resources to defend this matter in the Eastern District of California, and the "convenience," if any, that might accrue to the government is vastly outweighed by the extreme burden on Plaintiffs. Accordingly, Plaintiffs respectfully request that this Court deny the government's motion to transfer.

Dated: March 1, 2022                                    Respectfully Submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By:  */s/ Kent W. Kraushaar*
     Susan Baker Manning
     Lisa R. Weddle
     Kent W. Kraushaar

     *Attorneys for Plaintiffs A.F.P and J.F.C.*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on March 1, 2022, which will send notice of electronic filing to all counsel of record who has consented to electronic notification.

Dated: March 1, 2022

*/s/ Kent W. Kraushaar*
Kent W. Kraushaar
**MORGAN, LEWIS & BOCKIUS LLP**
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501
kent.kraushaar@morganlewis.com