1  **MORGAN, LEWIS & BOCKIUS LLP**
   Susan Baker Manning, CA Bar No. 197350
2  1111 Pennsylvania Avenue, NW
   Washington, DC 20004
3  Tel:     +1.202.739.3000
   Fax:    +1.202.739.3001
4  susan.manning@morganlewis.com

5  Lisa R. Weddle, CA Bar No. 259050
   Kent W. Kraushaar, CA Bar No. 307536
6  300 South Grand Avenue
   Twenty-Second Floor
7  Los Angeles, CA 90071-3132
   Tel:     +1.213.612.2500
8  Fax:    +1.213.612.2501
   lisa.weddle@morganlewis.com
9  kent.kraushaar@morganlewis.com

10 Attorneys for Plaintiffs
   A.F.P and J.F.C.
11

12                UNITED STATES DISTRICT COURT

13               EASTERN DISTRICT OF CALIFORNIA

14

15 A.F.P. and J.F.C.,                        Case No. 1:21-cv-00780-DAD-EPG

16             Plaintiffs,                   **OPPOSITION TO
                                             MOTION TO DISMISS**
17        vs.
                                             Date:     April 19, 2022
18 UNITED STATES OF AMERICA,                 Time:     9:30 a.m.
                                             Judge:    Hon. Dale A. Drozd
19             Defendant.                              Courtroom 5

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 3

        A.      Defendant's Family Separation Policy.................................................... 3

        B.      Plaintiffs' Separation............................................................................... 5

III.    DISMISSAL STANDARDS................................................................................ 6

IV.     THIS COURT HAS JURISDICTION OVER PLAINTIFFS' FTCA CLAIMS, AND
        THE MOTION TO DISMISS SHOULD BE DENIED...................................... 7

        A.      The Discretionary Function Exception Does Not Shield Defendant From
                Liability.................................................................................................... 7

                1.      The Government Does Not Have Discretion to Violate the
                        Constitution.................................................................................. 7

                2.      Plaintiffs Are Not Required to Show that Their Constitutional Right to
                        Family Integrity Was Clearly Established. ................................. 10

                3.      The Government Has No Discretion to Violate Non-Discretionary
                        Rules and Regulations................................................................ 12

                4.      The Government Mischaracterizes Plaintiffs' Claims. ............... 13

                5.      The Government's Tortious Actions Were Not Grounded in Policy........ 14

        B.      The Due Care Exception Does Not Shield Defendant From Liability.................. 16

        C.      Plaintiffs' Claims Satisfy The FTCA's Private Analogue Requirement ............. 18

                1.      The Government's Conduct Has Private Analogues in Texas Law.......... 19

                2.      There Is No Exception to Defendant's Waiver of Sovereign Immunity
                        Based on the Performance of a "Uniquely Governmental Function."...... 21

        D.      The Government's Novel "Systemic" Tort Defense Has No Legal Basis............ 23

        E.      The Independent Contractor Exception Does Not Apply .................................... 24

V.      CONCLUSION ................................................................................................ 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.P.F. v. United States,*
   492 F. Supp. 3d 989 (D. Ariz. 2020)...............................................................................*passim*

*Adams v. United States,*
   420 F.3d 1049 (9th Cir. 2005)......................................................................................... 23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................................... 6

*Berkovitz v. United States,*
   486 U.S. 531 (1988) ........................................................................................................ 12

*Bhuiyan v. United States,*
   No. 14-0013, 2017 WL 2837023 (D.N. Mar. I. June 30, 2017) ..................................... 22

*Bivens v. Six Unknown Named Agents,*
   403 U.S. 388 (1971) ............................................................................................... 8, 10, 11

*Borquez v. United States,*
   773 F.2d 1050 (9th Cir. 1985).................................................................................... 16, 17

*Braden v. Wal–Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009)............................................................................................. 6

*Bryan v. United States,*
   913 F.3d 356 (3d Cir. 2019)............................................................................................ 12

*Butz v. Economou,*
   438 U.S. 478 (1978) ................................................................................................... 11, 12

*C.M. v. United States,*
   No. 19-cv-05217-PHX-SRB, 2020 WL 169819 (D. Ariz. Mar. 30, 2020)......................*passim*

*C.M. v. United States,*
   No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020)........................ 16, 17

*Chadd v. United States,*
   794 F.3d 1104 (9th Cir. 2015)........................................................................................... 7

*Chen v. United States,*
   854 F.2d 622 (2d Cir. 1988)............................................................................................ 22

*Cty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ...................................................................................................... 8, 9

*Dalal v. Molinelli,*
   No. CV 20-1434, 2021 WL 1208901 (D.N.J. Mar. 30, 2021) ....................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005)..................................................................... 6

*Dugard v. United States*,
  835 F.3d 915 (9th Cir. 2016)....................................................................... 19

*Elgamal v. United States*,
  No. 13-CV-867, 2015 WL 13648070 (D. Ariz. July 8, 2015), *aff'd sub nom Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018) ............................................ 22

*Fazaga v. F.B.I.*,
  916 F.3d 1202 (9th Cir. 2019)..................................................................... 7

*Fazaga v. F.B.I.*,
  965 F.3d 1015 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2720 (2021) ................................. 6, 11

*FDIC v. Craft*,
  157 F.3d 697 (9th Cir. 1998)....................................................................... 19

*Ferguson v. United States*,
  No. 15-cv-1253 JM (DHB), 2016 WL 4793180 (S.D. Cal. Sept. 14, 2016)............................ 17

*Galvin v. Hoy*,
  374 F.3d 739 (9th Cir. 2004)..................................................... 7, 10, 11, 12

*García-Feliciano v. United States*,
  No. CIV. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) .............................. 23, 24

*Hatahley v. United States*,
  351 U.S. 173 (1956)................................................................................ 18

*Indian Towing Co. v. United States*,
  350 U.S. 61 (1955)............................................................................. 19, 21

*J.S.R. by and through J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018) ........................................................ 9

*Jacinto-Castanon de Nolascov v. U.S. Immigr. & Customs Enf't*,
  319 F. Supp. 3d 491 (D.D.C. 2018) ...................................................... 9, 14

*Kwai Fun Wong v. Beebe*,
  No. CIV. 01-718-ST, 2006 WL 977746 (D. Or. Apr. 10, 2006) ............................... 17

*LaBarge v. Mariposa Cty.*,
  798 F.2d 364 (9th Cir. 1986)....................................................................... 19

*Lee v. United States*,
  CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020).................... 23

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) .............................................................. 7, 11, 12

*M.D.C.G. v. United States*,
  2016 WL 6638845 (S.D. Tex., Sept. 13, 2016, No. 7:15-CV-552) ........................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

*Morales v. United States,*
    895 F.3d 708 (9th Cir. 2018)................................................................................ 14

*Ms. L. v. U.S. Immigr. & Customs Enf't,*
    302 F. Supp. 3d 1149 (S.D. Cal. 2018) ............................................................ 9, 16

*Ms. L. v. U.S. Immigr. & Customs Enf't,*
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................... 4, 5, 9, 18

*Nuñez Euceda v. United States,*
    No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (Apr. 27, 2021 C.D. Cal.)................ *passim*

*Nurse v. United States,*
    226 F.3d 996 (9th Cir. 2000)......................................................................... *passim*

*O'Toole v. United States,*
    295 F.3d 1029 (9th Cir. 2002) ............................................................................. 6

*Ontiveros v. Borak,*
    136 Ariz. 500 (1983) ....................................................................................... 22

*Peña Arita v. United States,*
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ................................................................. 10

*Peterson v. Martinez,*
    3:19-cv-01447-WHO, 2020 WL 999832 (N.D. Cal. Mar. 2, 2020) ........................... 15

*Prescott v. United States,*
    973 F.2d 696 (9th Cir. 1992)......................................................................... 6, 18

*Rosenbaum v. Washoe Cty.,*
    663 F.3d 1071 (9th Cir. 2011)............................................................................. 8

*Ruiz v. United States,*
    No. 13–CV–1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014)................ 14

*Sabow v. United States,*
    93 F.3d 1445 (9th Cir. 1996)........................................................................ 14, 15

*Sandoval v. Cty. of San Diego,*
    985 F.3d 657 (9th Cir. 2021), cert. denied, 142 S. Ct. 711 (2021) ........................... 11

*Sauceda v. United States,*
    No. 07-CV-2267, 2009 WL 3756703 (D. Ariz. Nov. 5, 2009)................................. 22

*Scott v. Quay,*
    19-CV-1075 (MKB) (SMG), 2020 WL 8611292 (E.D.N.Y. Nov. 16, 2020)................ 14, 15

*Terraza v. Safeway Inc.,*
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ................................................................. 6

*U.S. Fidelity & Guaranty Co. v. United States,*
    837 F.2d 116 (3d Cir. 1988).............................................................................. 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*United States v. Gaubert,*
   499 U.S. 315 (1991) .................................................................................. 7, 12

*United States v. Mitchell,*
   445 U.S. 535 (1980) ......................................................................................... 6

*United States v. Muniz,*
   374 U.S. 150 (1963) ....................................................................................... 19

*Welch v. United States,*
   409 F.3d 646 (4th Cir. 2005) .................................................................... 16, 17

*Xue Lu v. Powell,*
   621 F.3d 944 (9th Cir. 2010) ........................................................................ 22

**State Cases**

*Cooper v. Trent,*
   551 S.W.3d 325 (Tex. App. 2018) ................................................................ 20

*Hunt v. Baldwin,*
   68 S.W.3d 117 (Tex. App. 2001) .................................................................. 20

*Peerless Oil & Gas Co. v. Teas,*
   138 S.W.2d 637 (Tex. Civ. App. 1940) ........................................................ 20

*Salazar v. Collins,*
   255 S.W.3d 191 (Tex. App. 2008) ........................................................... 20, 21

*Twyman v. Twyman,*
   855 S.W.2d 619 (Tex. 1993) .................................................................... 19, 20

**Federal Statutes**

8 U.S.C. § 1232(b)(3) ........................................................................................... 17

8 U.S.C. § 1325(a) ............................................................................................. 3, 4

28 U.S.C. § 1346(b)(1) ............................................................................... 6, 18, 19

28 U.S.C. § 2674 ................................................................................................... 19

28 U.S.C. § 2680(a) ..................................................................................... 7, 10, 18

**Federal Regulations**

U.S. Customs & Border Protection, National Standards on Transport, Escort, Detention, and
   Search 4 (Oct. 2015), available at https://www.cbp.gov/sites/default/files/assets/
   documents/2020-Feb/cbp-teds-policy-october2015.pdf .......................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

**Treatises**

Henry J. Dickman, *Conflicts of Precedent*,
    106 Va. L. Rev. 1345 (2020)................................................................................................. 12

Restatement (Second) of Torts § 320 (1965) .............................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   **I.        <u>INTRODUCTION</u>**

2          Defendant the United States claims to recognize the "human tragedy" caused by its prior

3   practice of systematically and forcibly separating immigrant families at the United States-Mexico

4   border.  But those are hollow words when the government comes to this Court asking it to throw

5   out the Federal Tort Claims Act (FTCA) claims brought by Plaintiffs, a father and son who came

6   to the U.S. seeking asylum only to be forcibly separated for *fifteen months*.  Government agents

7   whisked Plaintiff J.F.C., a minor, away with no warning, no explanation, and no information

8   about where he was going or why.  The government held J.F.C. in a New York facility thousands

9   of miles away from his father, Plaintiff A.F.P.  The government even went so far as to deport

10  A.F.P., leaving J.F.C. alone in this country.  The government's admitted practice of separating

11  immigrant children and parents at the border caused Plaintiffs immense suffering—*exactly as*

12  *intended*.  The government intentionally abused and traumatized Plaintiffs, and used their intense

13  suffering to force them to abandon their legitimate asylum claims, and to deter other refugees

14  from seeking asylum in the United States.

15         The government tries to avoid liability for its egregious conduct by arguing that this Court

16  lacks subject matter jurisdiction.  Defendant's Motion to Dismiss recycles several arguments that

17  courts in this Circuit already have rejected in at least three other family separation cases (and

18  counting).  *See Nuñez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL

19  4895748, at *3 (Apr. 27, 2021 C.D. Cal.); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D.

20  Ariz. 2020); *C.M. v. United State*s, No. 19-cv-05217-PHX-SRB, 2020 WL 1698191, at *4 (D.

21  Ariz. Mar. 30, 2020) ("*C.M. I*").  This Court should do the same and deny Defendant's Motion.

22         *First*, the government argues that the discretionary function exception to the FTCA bars

23  Plaintiffs' claims.  This argument fails at the outset, however, because the government does not

24  have discretion to violate the Constitution.  Plaintiffs have adequately alleged that the government

25  violated their constitutional right to family integrity when Customs and Border Protection

26  ("CBP") and Immigration and Customs Enforcement ("ICE") agents forcibly separated Plaintiffs

27  for fifteen months following their crossing into the United States in search of asylum.  Under

28  Ninth Circuit law, the government therefore cannot rely on the discretionary function exception to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

avoid Plaintiffs' claims at the motion to dismiss stage.  Beyond the constitutional aspect, Defendant's discretionary function exception argument fails for myriad other reasons, including that the government's conduct also ran afoul of other well-established, non-discretionary rules and regulations, and that the government's tortious actions were not grounded in policy.

*Second*, the due care exception does not allow the government to avoid liability either. Notably, the government misstates the first prong of the relevant test, and fails to address the second prong.  As to the first prong, the government claims that the due care exception can apply when the government's conduct is merely "authorized by statute or regulation."  Ninth Circuit law, however, holds that the course of conduct must be *required* by a statute or regulation.  As multiple other courts have already properly concluded, no statute or regulation required the government to forcibly separate Plaintiffs and other immigrant families like them.  Furthermore, the government does not even try to argue that its agents exercised due care in carrying out Plaintiffs' separation—likely because it is abundantly clear that they did not.

*Third*, the government contends that the Court lacks jurisdiction because there is no private person analogue for Plaintiffs' claims.  In advancing this argument, the government mischaracterizes Plaintiffs' claims as arising from the government's enforcement of immigration laws, which it argues is conduct that the government alone can pursue.  But Plaintiffs' claims do not arise from the government's enforcement of immigration law.  Rather, Plaintiffs' claims arise from their forcible separation under a policy that *specifically intended* to inflict severe emotional distress on immigrant families so as to deter other asylum seekers from coming to the United States.  The law does not require that a private person could be liable under exactly the same circumstances, but rather under analogous circumstances—and Texas law recognizes claims for intentional infliction of emotional distress (IIED), abuse of process, and negligence under similar circumstances.

*Fourth*, the government makes the novel argument that Plaintiffs cannot pursue so-called "systemic-tort" claims against the United States government.  However, this argument is not grounded in any prior precedent and, like the government's other arguments, mischaracterizes Plaintiffs' claims.  Contrary to the government's assertions, Plaintiffs' Complaint does not allege

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1  generalized negligence against the government as a whole, but rather alleges numerous specific

2  actions by government employees that serve as the basis for this action.  As such, while Plaintiffs

3  sue "the government"—as they must under the FTCA—it was the tortious conduct of individual

4  government employees that gave rise to Plaintiffs' claims.

5  *Lastly*, the government raises the independent contractor exclusion to avoid liability for

6  the abuse Plaintiff J.F.C., a minor, suffered while in the custody of the Office of Refugee

7  Resettlement ("ORR").  This argument fails because this negligence claim, like all of Plaintiffs'

8  claims, has its genesis in the government's forced separation of Plaintiffs.  But for this separation,

9  J.F.C. would not have entered ORR custody and would not have experienced additional harms as

10  a result of the government's conduct.

11  Because each of the government's defenses and arguments are factually and legally

12  infirm—and already have been rejected by other courts under like circumstances—Plaintiffs

13  respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

14  **II.    FACTUAL BACKGROUND**

15  **A.    Defendant's Family Separation Policy**

16  Before 2017, the government did not systematically refer asylum seekers, especially

17  families, for prosecution of unlawful entry or re-entry in violation of 8 U.S.C. § 1325(a).  Compl.

18  ¶ 29.  Indeed, in the 20 years preceding 2017, less than one-third of apprehensions by CBP had

19  resulted in criminal prosecutions, and any sentences imposed tended to be short, ranging from

20  two to 15 days.  *Id.*  Things changed in early 2017, when Defendant began considering separating

21  detained immigrant parents from their children for the express purpose of deterring others from

22  seeking asylum in the United States.  *Id.* ¶¶ 1–2; *see also* Motion to Dismiss (ECF 22-1) ("Mot.")

23  at 4–5.

24  As noted in Defendant's moving papers, the first change in immigration enforcement

25  occurred in January 2017 when newly inaugurated President Trump issued Executive Order

26  13767, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767"), which altered Defendant's prior

27  practices regarding detention of aliens arrested at the border for alleged violations of immigration

28  law.  Mot. at 4–5.  Three months later, on April 11, 2017, the Department of Justice ("DOJ")

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   issued guidance to all federal prosecutors about a renewed commitment to criminal immigration

2   enforcement and directed that federal law enforcement prioritize the prosecution of several

3   immigration offenses, including illegal entry under 8 U.S.C. § 1325 and illegal reentry of

4   individuals who had been removed previously.  *Id.* at 5 (citing U.S. DOJ Memorandum on

5   Renewed Commitment to Criminal Immigration Enforcement (Apr. 11, 2017), available at

6   https://www.justice.gov/opa/press-release/file/956841/download).

7        Consistent with EO 13767 and DOJ's April 2017 guidance, in the summer of 2017,

8   Defendant started pilot testing its family separation program in Texas.  *See* U.S. Dep't of Justice,

9   Office of the Inspector General, *Review of the Department of Justice's Planning and*

10  *Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of*

11  *Homeland Security and Health and Human Services* at 2 (Jan. 2021), available at

12  https://oig.justice.gov/sites/default/files/reports/21-028_0.pdf.  Despite wide-ranging criticism of

13  the pilot program's harmful effects, Defendant expanded its family separation program with then-

14  Attorney General Jeff Sessions' April 6, 2018 announcement of a "Zero Tolerance" directive to

15  all United States Attorneys along the southern border.  Compl. ¶ 29.  Under the framework first

16  introduced in 2017, Defendant mandated the prosecution anyone who committed the offense of

17  unlawful entry or re-entry from Mexico into the United States, and used such prosecutions as a

18  pretext to improperly re-classify the children of such detained parents as "unaccompanied alien

19  children" ("UACs").  *Id.* ¶¶ 29–32.  After erroneously and improperly classifying these immigrant

20  minors as UACs, Defendant whisked these children away in the brief periods that their parents

21  were absent to attend court hearings or to serve minimal, days-long sentences.  *Id.* ¶ 32.  As a

22  result of this family separation policy—which was incepted in 2017 and expanded in 2018—

23  thousands of immigrant parents and children were separated for months or years.  *See id.* ¶¶ 1, 33.

24  In Plaintiffs' case, they were separated for fifteen months.  *Id.* ¶¶ 1, 28.

25        Defendant knew that its family separation program would inflict severe emotional distress

26  on immigrant families; indeed, that was the program's intent.  *Id.* ¶¶ 1–2.  In June 2018, mere

27  months after Defendant's expansion of the family separation program in April 2018, a district

28  court in the Southern District of California enjoined Defendant from separating families absent a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

finding of parental unfitness, even where the parent had been prosecuted for misdemeanor entry under the "Zero Tolerance" policy.  *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ("*Ms. L II*").  In granting this preliminary injunction, the district court determined that Defendant's family separation practices likely violated the Due Process Clause of the U.S. Constitution.  *Id.* at 1145–46.

### B.    Plaintiffs' Separation

Plaintiffs here are A.F.P. and J.F.C., a father and son who came to the United States to seek asylum from persecution in their native Honduras.  Compl. ¶¶ 16–18, 20–23.  As Defendant's own evidence shows, Plaintiffs had, and still have, a credible fear of returning to Honduras.  *See* ECF 22-2 (Exhibits Supporting Motion to Dismiss), Ex. G at 3.  Upon crossing the United States border on or around January 29, 2018, Plaintiffs voluntarily approached CBP agents to express their desire to seek asylum.  Compl. ¶ 24.  Instead, CBP arrested Plaintiffs, stripped them of their belongings, and separated them.  *Id.* ¶¶ 24–25.  During the first two days of their detention, government officials permitted Plaintiffs to see each other for just thirty minutes a day, but otherwise kept them physically separated.  *Id.* ¶ 25.

On or around January 31, 2018, pursuant to Defendant's family separation policy, A.F.P. and other detainees were taken to court and charged with illegal entry.  *See id.* ¶ 26.  A.F.P.'s court hearing took just a few hours, and he was sentenced to time served; however, despite A.F.P.'s predictably short absence from the immigration detention facility, ICE and CBP used A.F.P.'s federal court proceedings as a pretext to erroneously designate J.F.C. as a UAC.  *Id.* ¶ 34–35.  ICE and CBP made that determination even though A.F.P. and J.F.C. entered the country together, were in immigration custody together (though prevented from seeing each other more than thirty minutes a day), and A.F.P. was never held in a non-immigration detention facility except for the few hours he spent in federal court.  *Id.* ¶ 36.  As a result of J.F.C.'s UAC designation, ICE and CBP treated J.F.C. as if he were legally in the custody of the ORR and sent him to a facility thousands of miles away in New York.  *Id.* ¶¶ 36–37.

As a result of Defendant's unconstitutional and tortious actions, Plaintiffs were separated for fifteen months, causing them extreme emotional harm.  *Id.* ¶¶ 28, 74–81.  Defendant's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   conduct of forcibly separating Plaintiffs, among other things, violated Plaintiffs' constitutional

2   right to family integrity.  *Id.* ¶¶ 79–80.  During his separation from his son, A.F.P. experienced

3   physical and emotional trauma at the hands of Defendant's employees as a result of their

4   constitutional and statutory violations.  *Id.* ¶¶ 38–58.  And, as a further result of Defendant's

5   unlawful separation, J.F.C. too suffered from additional physical and emotional injury, including

6   an injury to his ear that has left him with permanent partial hearing loss.  *Id.* ¶¶ 59–73.

7   **III.    DISMISSAL STANDARDS**

8          Plaintiffs' causes of action arise under the FTCA. While the government is generally

9   immune from liability absent its consent, *United States v. Mitchell*, 445 U.S. 535, 538 (1980), the

10   FTCA provides that consent "under circumstances where the United States, if a private person,

11   would be liable to the claimant in accordance with the law of the place where the act or omission

12   occurred."  *Fazaga v. F.B.I.*, 965 F.3d 1015, 1064 (9th Cir. 2020), *cert. denied*, 141 S. Ct.  2720

13   (2021) (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA's waiver of sovereign immunity contains a

14   number of exceptions. Because the FTCA is a remedial statute, those exceptions must be read

15   narrowly, *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002), and the government

16   bears the burden of proving they apply, *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir.

17   1992).

18          On a motion to dismiss, "the court must construe the complaint in the light most favorable

19   to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the

20   complaint in her favor."  *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  The

21   "'complaint should be read as a whole, not parsed piece by piece to determine whether each

22   allegation, in isolation, is plausible.'"  *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D.

23   Cal. 2017) (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

24   Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the

25   reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556

26   U.S. 662, 679 (2009).

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

**IV.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' FTCA CLAIMS, AND THE MOTION TO DISMISS SHOULD BE DENIED**

### A.    The Discretionary Function Exception Does Not Shield Defendant From Liability

Defendant seeks dismissal under the discretionary function exception to the FTCA's waiver of sovereign immunity.  Section 2680(a) of Title 28 provides that the waiver of sovereign immunity "shall not apply to" a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty."  To invoke the discretionary function exception, Defendant must show that its actions (1) "involve an element of judgment or choice," and (2) are "based on considerations of public policy."  *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991).  The government bears the burden of showing that the exception applies.  *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015).  Defendant has made neither showing.

### 1.    The Government Does Not Have Discretion to Violate the Constitution.

The discretionary function exception does not shield the government from FTCA liability when its tortious actions are also unconstitutional.  *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) ("the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply"); *Fazaga v. F.B.I.*, 916 F.3d 1202, 1251 (9th Cir. 2019) (same).  This is so because the government does not have discretion to violate the law, and unlawful actions therefore cannot meet the first element of the *Gaubert* test.  *Galvin v. Hoy*, 374 F.3d 739, 758 (9th Cir. 2004) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate.").  A complaint that plausibly alleges a constitutional violation cannot be dismissed on discretionary function exception grounds.  *Nurse*, 226 F.3d at 1002 (reversing dismissal of plaintiff's FTCA claims pursuant to the discretionary function exception where plaintiff alleged a constitutional violation); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (holding that "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription" and discussing cases from the First, Second, Third, Fourth, Fifth, Eighth, and Ninth circuits which held the same).

The government's actions in separating migrant families are not protected by the discretionary function exception because the well-plead facts of the complaint allege conduct that, as many courts have found, violates the U.S. Constitution.  While Plaintiffs have not asserted a *Bivens* claim[1] seeking a remedy for Defendant's constitutional violations, the facts Plaintiffs allege show that the government cannot invoke the discretionary function exception.  Plaintiffs have plead the facts of their forced and prolonged separation—including the government's intentionally cruel and inhumane treatment of them—in detail.  *See, e.g.,* Compl. ¶¶ 1–6, 27, 34–46, 56–73.  Plaintiffs have also specifically plead that the government's conduct was unconstitutional.  *Id*. ¶ 80 ("Defendant's employees forcibly separated Plaintiffs . . . in disregard for Plaintiffs' statutory and constitutional rights."), ¶ 8 (similar), ¶ 79 ("the immigration officers' actions offended Plaintiffs' rights to family integrity").

The "substantive due process right to family integrity . . . is well established." *Rosenbaum v. Washoe Cty*., 663 F.3d 1071, 1079 (9th Cir. 2011).  In determining whether a substantive due process right applies to particular executive action, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

The allegations here easily meet this standard.  Plaintiffs came to the United States seeking asylum.  Compl. ¶¶ 3, 20–24.  After they arrived, government agents forcibly separated A.F.P. and J.F.C.; taunted A.F.P. and lead him them to believe that he would never see his son again; refused to let J.F.C.—a scared and lonely child—speak to his father for weeks, until A.F.P. went on a hunger strike; and ultimately deported A.F.P., leaving J.F.C. alone in the United States. *See, e.g.,* Compl. ¶¶ 26, 27, 42–46, 55.  And the government's purpose for doing so was to be so cruel as to dissuade Plaintiffs from pursuing their asylum claims—claims that Plaintiffs have a legal right to present—and to drum up publicity that might discourage others from seeking asylum.  Compl. ¶ 2.  This is exactly the type of abuse and oppression that the Due Process Clause protects against. *See Cty. of Sacramento*, 523 U.S. at 846 ("[T]he Due Process Clause was

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (inferring a cause of action for money damages against individual federal officials who violate constitutional rights).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression.") (citations and quotations omitted).

Upon considering these same practices, the Southern District of California held:

> These allegations sufficiently describe government conduct that arbitrarily tears at the sacred bond between parent and child, and is emblematic of the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" . . . Such conduct, if true, as it is assumed to be on the present motion, is brutal, offensive, and fails to comport with traditional notions of fair play and decency.  At a minimum, the facts alleged are sufficient to show the government conduct at issue "shocks the conscience" and violates Plaintiffs' constitutional right to family integrity.

*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("*Ms. L I*") (citation omitted) (denying government motion to dismiss substantive due process claims based on separation of children from parents during immigration detention).

Indeed, *every court* that has considered the constitutionality of the government's past practice of separating families at the border has found that it is likely unconstitutional.  Following *Ms. L.*, the D.C. district court "easily conclude[d]" that a family involuntarily separated after crossing the border "likely w[ould] succeed on their substantive due process claim premised on their constitutional right to family integrity." *Jacinto-Castanon de Nolascov v. U.S. Immigr. & Customs* Enf't, 319 F. Supp. 3d 491, 499 (D.D.C. 2018).  When the District of Connecticut considered the same family-separation practice, even the government "agree[d] that a constitutional violation occurred when the government separated children from their parents." *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018).  The *Ms. L.* court ultimately enjoined the government's family-separation practice, holding that the "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their [substantive] due process claim." *Ms. L II*, 310 F. Supp. 3d at 1145.  Tellingly, the government does not cite a single case—from any jurisdiction—concluding that forcibly separating families in circumstances analogous to those alleged in the Complaint is constitutional.

Similarly, *every court* that has weighed in on the issue has concluded that, because the government's practice of forcibly separating families at the border was almost certainly unconstitutional, it cannot be shielded by the discretionary function exception.[2]  The *C.M.* court concluded that plaintiffs had "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception." *C.M. I*, 2020 WL 1698191, at \*4.  In *A.P.F.*, the court reached a similar conclusion, holding that, "[b]ecause government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs."  *A.P.F.*, 492 F. Supp. 3d at 996.  And in *Nuñez Euceda*, the court concluded that the plaintiff "has plausibly alleged that the government's [family separation] Policy violated his constitutional rights" and that, as a result, "the discretionary function [exception] does not bar Plaintiff's claims."  *Nuñez Euceda*, 2021 WL 4895748, at \*3.

### 2. Plaintiffs Are Not Required to Show that Their Constitutional Right to Family Integrity Was Clearly Established.

The government cannot and does not deny that the same family separation practice at issue here has been deemed unconstitutional by multiple courts.  Instead, the government urges this Court to take the novel step of importing the common-law doctrine of qualified immunity into the § 2680(a) jurisdictional analysis.  Mot. 17–18.  This is not the law, and the argument that this Court should expand the discretionary function exception to remove jurisdiction unless the FTCA claim is based on a violation of a "specific, clearly established directive," *id.* at 18, has no basis in the text of the statute or in precedent.  *See, e.g., Galvin*, 374 F.3d at 758 ("Federal officials do not possess discretion to violate constitutional rights.").

In the Ninth Circuit, the discretionary function exception does not apply where Plaintiffs' allegations, if taken as true, demonstrate that government officials violated their constitutional rights, even if the relevant constitutional rights were not "clearly established" at the time of the conduct.  *See id.*  In *Galvin*, the plaintiff brought both a *Bivens* claim against individual officers

---

[2] The only court that has concluded the discretionary function exception applies to the government's family-separation practice never considered whether the constitutionality of the practice made the discretionary function exception inapplicable.  *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 690 (S.D. Tex. 2020).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

and an FTCA claim against the government.  *Id.* at 744.  The Ninth Circuit held that government officials had violated constitutional rights, but the individual defendants were entitled to qualified immunity as to the *Bivens* claim because the constitutional right was not clearly established.  *Id.* at 757.  But in contrast, the Ninth Circuit also held that the discretionary function exception did not shield the government from FTCA liability for that same conduct because the individual "defendants violated the Constitution" and "'government conduct cannot be discretionary if it violates a legal mandate.'"  *Id.* at 758 (quoting Nurse, 226 F.3d at 1002 & n.2).[3]

Although Defendant cites both *Nurse* and *Fazaga v. F.B.I.*, neither aids it.  In both cases, the Ninth Circuit held that dismissal at the pleading stage was error because whether a constitutional violation had occurred, and thus whether the discretionary function exception could apply, could not be determined based on the complaint alone.  *Nurse*, 226 F.3d at 1002; *Fazaga v. F.B.I.*, 965 F.3d at 1065.  The *Nurse* court declined to address "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor."  226 F.3d at 1002 n.2.  *Fazaga* does not even mention the issue, 965 F.3d at 1064−65, and thus does not support Defendant's position either.

None of the qualified immunity cases Defendant cites concerns the FTCA at all.  For example, the government's quotation of *Butz v. Economou*, 438 U.S. 478 (1978), is, at best, wrong if not actually misleading.  Contrary to the government's argument, *Butz* does not stand for the proposition that discretionary function exception shields even unconstitutional conduct from FTCA liability.  Rather the single sentence the government quotes, *see* Mot. at 18, is dicta discussing the government's argument in favor of absolute immunity for executive officials—an argument the *Butz* court rejected in the next sentence because it went too far.  *Id*. at 505 ("The

---

[3] The policy considerations that animate the "clearly established" standard in qualified immunity cases simply do not apply to FTCA claims.  "[T]he premise of qualified immunity is that state officials should not be held liable" (by which the court means personally liable) "for money damages absent fair warning that their actions were unconstitutional," which is why constitutional rights must be "clearly established" before they are actionable.  *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021), cert. denied, 142 S. Ct. 711 (2021).  Otherwise, the "fear of personal monetary liability and harassing litigation [might] unduly inhibit officials in the discharge of their duties, to the detriment of the public interest."  *Loumiet*, 828 F.3d at 946 (internal quotation marks omitted).  But that premise is inapplicable here, where the government, not an individual official, bears liability.

1   extension of absolute immunity from damages liability to all federal executive officials would

2   seriously erode the protection provided by basic constitutional guarantees.").

3          As Defendant notes, in *Bryan v. United States*, a three-judge panel of the Third Circuit

4   stated that the plaintiffs could not maintain an FTCA claim where the alleged conduct "did not

5   violate clearly established constitutional rights."  913 F.3d 356, 364 (3d Cir. 2019).  But the panel

6   did so without citation or explanation, and *Bryan* is inconsistent with earlier Third Circuit

7   precedent that it did not acknowledge.  *See U.S. Fidelity & Guaranty Co. v. United States*, 837

8   F.2d 116, 120 (3d Cir. 1988) ("[C]onduct cannot be discretionary if it violates the Constitution, a

9   statute, or an applicable regulation."); *Dalal v. Molinelli*, No. CV 20-1434, 2021 WL 1208901, at

10  *10 (D.N.J. Mar. 30, 2021) (continuing to follow *U.S. Fidelity & Guaranty Co.*); *see also* Henry

11  J. Dickman, *Conflicts of Precedent*, 106 Va. L. Rev. 1345 (2020) ("The law of the circuit doctrine

12  requires three-judge panels in the federal courts of appeals to give stare decisis effect to past

13  decisions of the circuit, which can only be overruled by the circuit sitting en banc or by the U.S.

14  Supreme Court.").  Even if *Bryan* were a correct statement of Third Circuit law—and it appears

15  not to be—it is unpersuasive and contrary to binding Ninth Circuit precedent, as well as the

16  decisions of numerous other courts of appeal.  *See, e.g., Nurse*, 226 F.3d at 1002; *Galvin*, 374

17  F.3d at 758; *Loumiet*, 828 F.3d at 946 (gathering cases).

18         Because Plaintiffs have adequately pleaded actions that rise to the level of constitutional

19  violations, the government cannot invoke the discretionary-function exception to elude liability at

20  this motion to dismiss stage.

21              **3.    The Government Has No Discretion to Violate Non-Discretionary
                        Rules and Regulations.**
22

23         Just as the discretionary function exception does not shield unconstitutional government

24  conduct from liability, the exception does not apply where "'federal statute, regulation, or policy

25  specifically prescribes a course of action for an employee to follow,' because 'the employee has

26  no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v.

27  United States*, 486 U.S. 531, 536 (1988)) (noting that agency guidelines may impose a

28  requirement); *see also Nurse*, 226 F.3d at 1001 (the discretionary function exception shields only

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   conduct involving judgment or choice).

2          In addition to being unconstitutional, government employees' conduct violated binding

3   regulations and agency policy.  For example, CBP policy requires that it "maintain family unity to

4   the greatest extent operationally feasible, absent a legal requirement or an articulable safety or

5   security concern that requires separation."  U.S. Customs & Border Protection, National

6   Standards on Transport, Escort, Detention, and Search 4 (Oct. 2015), available at

7   https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-

8   october2015.pdf.  Neither the pilot program that was in effect when government CBP employees

9   separated Plaintiffs, nor the later "Zero Tolerance Memorandum," revoked CBP policy or created

10  a legal requirement to separate A.F.P. and J.F.C. and then engage in ongoing cruelty by refusing

11  to allow Plaintiffs to communicate, threatening continued separation, and participating in ongoing

12  harassment.  The Complaint sufficiently alleges that in separating A.F.P. and J.F.C., and the

13  subsequent actions taken against them, the government did not maintain the unity of their family

14  "to the extent operationally feasible."

15              **4.       The Government Mischaracterizes Plaintiffs' Claims.**

16          The government tries to distract from the hardly controversial principle that it may not

17  violate the Constitution or laws with impunity by mischaracterizing Plaintiffs' claims.  Defendant

18  argues that its forcible and prolonged separation of Plaintiffs was discretionary because the

19  government has discretion "to enforce the Nation's criminal laws," Mot. at 12, to decide whether

20  to prosecute a case, *id.*, and "arrange for appropriate places of detention," *id*. at 13.  These

21  arguments are all red herrings.  Plaintiffs are not challenging the government's enforcement of

22  criminal laws, prosecution decisions, or detention determinations.  They are challenging

23  government officials' forcible and prolonged separation of a father and son, which was carried

24  out for the purpose of inflicting emotional harm.  That distinction is crucial because, while it is

25  not inherently unconstitutional to enforce criminal laws, prosecute criminal suspects, or decide

26  where to place detainees, it was unconstitutional to forcibly separate Plaintiffs, as numerous

27  courts considering analogous circumstances have held.  While the government has general

28  discretion in how it enforces immigration law, its enforcement must comport with constitutional

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

protections—and courts have determined that separating families in the manner alleged in the Complaint violates those protections. *See Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 501 ("While defendants have a legitimate interest in enforcing the immigration laws . . . nothing in federal law suggests that deterring immigration by indefinitely separating families . . . is a compelling or legitimate government objective."); *C.M. I*, 2020 WL 1698191, at *4 (concluding that "the United States was not enforcing federal law when it separated Plaintiffs").

> **5.    The Government's Tortious Actions Were Not Grounded in Policy.**

Even if Plaintiffs had not adequately alleged that the government's actions violated their constitutional rights and existing regulations and policies, the government still could not invoke the discretionary-function exception because the manner in which the separation was initially carried out, the withholding of information about J.F.C.'s removal to a distant state, the threat of continued separation, and the ongoing harassment by government employees were not grounded in policy. At step two of the two-step discretionary-function inquiry, the "discretionary" decision must be "susceptible to policy analysis grounded in social, economic, and political concerns" in order for the exception to preclude liability under the FTCA. *Morales v. United States*, 895 F.3d 708, 714 (9th Cir. 2018). These actions were not.

In *Ruiz*, for example, the court determined that CBP officers' treatment of a minor could not "be said to be susceptible to policy analysis" because the court could not "discern how deciding to wait fourteen hours before contacting E.R.'s parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." *Ruiz v. United* States, No. 13–CV–1241 (KAM) (SMG), 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (finding "specific acts" by military officers including "verbal abuse and a[] [retaliatory] investigation" did not involve considerations of policy and were therefore not shielded by the exception); *Scott v. Quay*, 19-CV-1075 (MKB) (SMG), 2020 WL 8611292, at *13–14 (E.D.N.Y. Nov. 16, 2020) (noting that an official's "laziness, carelessness, or inattentiveness" in carrying out discretionary duties are negligent acts not grounded in considerations of policy).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

Here, the government's objectively inhumane and intentionally cruel treatment of Plaintiffs in carrying out the unconstitutional separation cannot be characterized as grounded in any "policy" decision.  Government agents at the border "caused extraordinary trauma to thousands of families, including Plaintiffs A.F.P. and his son J.F.C."  Compl. ¶ 1.  After Plaintiffs arrived in the United States, immigration officers held them in a cramped and freezing "hielera," or "ice box" without sufficient food or water, and verbally abused and taunted A.F.P., both before and after being separated from his son.  *Id*. ¶¶ 25, 38-50, 57.  The choice to suddenly separate a child from a parent without warning, explanation, or even a chance to say goodbye, *id*. ¶ 27, cannot be grounded in any policy.  So too the government's choice to tell J.F.C. that he was going to "be taken," while refusing to tell him anything about who was taking him, why they were taking him, or where they were taking him.  *Id*. ¶ 60.  Nor can the government's choice to tear this family apart with no warning and then refuse to allow A.F.P. and J.F.C. to communicate for weeks on end until A.F.P. went on a hunger strike be grounded in any policy.[4]  The government fails to explain how these actions were in furtherance of any policy.  The decision not to inform J.F.C. where, how, or why he was being "taken" was, at the very least, a result of the carelessness and inattentiveness that is not shielded under the exception, and more likely intentional.  *See Scott*, 2020 WL 8611292, at *13–14.  As was the verbal abuse that both A.F.P. and J.F.C. suffered.  *See Sabow*, 93 F.3d at 1454.

Moreover, contrary to the government's suggestion, the acts here alleged were in no way a necessary result of the separation, but instead constituted an unnecessary act of cruelty on top of the separation itself.  No policy excuses the intentionally cruel and wholly unnecessary way in which the government carried out the separation of A.F.P. and J.F.C.  And as a result, even if this Court's discretionary-function inquiry proceeds past step one, the government still cannot evade

---

[4] Even if FTCA claims based solely on confinement conditions are generally not allowed, Plaintiffs' claims are not solely based on confinement conditions.  Indeed, the Complaint adequately alleges different tortious acts going beyond Plaintiffs' confinement that form the basis of their FTCA claims.  At a minimum, Plaintiffs' conditions of confinement are a context within which the totality of actions alleged in the Complaint, which are more than capable of inducing emotional distress, can be assessed.  *Peterson v. Martinez*, 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (holding that inmate placement and management decisions "could be removed from the protection of the discretionary function exception" if those decisions were shown to be retaliatory or otherwise not in fact policy driven).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   liability for its actions.

2                                        * * *

3          Government agents ran afoul of non-discretionary legal mandates and acted in a manner

4   that cannot reasonably be characterized as grounded in policy.  Most importantly, the government

5   never has the discretion to violate the Constitution, which another district court in this circuit has

6   found the government to have done in separating families at the border.  *Ms. L I*, 302 F. Supp. 3d

7   at 1167 (noting that separating parents from their children and government's conduct in

8   separating families "shocks the conscience" and "violates Plaintiffs' constitutional right to family

9   integrity").  Accordingly, Defendant's attempt to use the discretionary function exception to

10  escape FTCA liability fails.

11         **B.       The Due Care Exception Does Not Shield Defendant From Liability**

12         Defendant next argues for dismissal of Plaintiffs' claims by asserting the due care

13  exception.  The due care exception applies where (1) "a statute or regulation in question

14  specifically pr[e]scribes a course of action for an officer to follow," and (2) "the officer exercised

15  due care in following the dictates of that statute or regulation."  *Welch v. United States,* 409 F.3d

16  646, 652 (4th Cir. 2005).  Defendant fails to even articulate the two-prong standard for applying

17  the due care exception, much less meet it.

18         Relying on an argument previously rejected in other family separation cases in this

19  Circuit, Defendant tries to alter the underlying rule by asserting that the due care exception

20  applies not only when a course of conduct is required by a statute or regulation, but also when the

21  conduct is merely "authorized by statute or regulation."  Mot. at 19–20 (citing *Borquez v. United*

22  *States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985)).  But that is not the proper standard.  In assessing

23  the applicability of the due care exception, courts in this Circuit routinely apply *Welch* and ask

24  whether a statute or regulation *requires* government officials to perform conduct when assessing a

25  due care exception defense.  *See, e.g.*, *Nuñez Euceda*, 2021 WL 4895748, at *3 ("Following other

26  courts in this circuit, the Court applies the two-prong test established by *Welch*. . . .");  *C.M. v.*

27  *United States*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560, at *4 (D. Ariz. July 6, 2020)

28  ("*C.M. II*") (denying motion to certify case for interlocutory appeal after the government failed to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

                    16                    OPPOSITION TO MOTION TO DISMISS
                                          1:21-CV-00780-DAD-EPG

show a Circuit dispute regarding application of the *Welch* test); *see also A.P.F.*, 492 F. Supp. 3d at 995–96 (applying *Welch*); *Ferguson v. United States*, No. 15-cv-1253 JM (DHB), 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016) (same); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006) (same).  Accordingly, the government's novel "authorized by statute or regulation" argument is irrelevant to the proper analysis.

The government's reliance on *Borquez* in its attempt to depart from settled law is misplaced.  *Borquez* does not hold that the due care exception encompasses any governmental conduct that was "authorized" by a statute or regulation.  *See A.P.F.*, 492 F. Supp. 3d at 995.  Rather, and at most, *Borquez* creates a narrow exception to *Welch* and held that the due care exception applies when a single statutory or regulatory provision expressly authorizes the exact tortious conduct challenged by a FTCA claim, such that the Court could not rule on the legality of the conduct without also ruling on the legality of the statutory or regulatory provision.  773 F.2d at 1052.  Accordingly, *Borquez* only comes into play if adjudicating a FTCA claim would require the court to rule on the legality of a statutory or regulatory provision.

That is not the case here.  No single statutory or regulatory provision expressly authorized the government to separate Plaintiffs in the circumstances alleged in the Complaint, and Defendant does not identify any.  Instead, Defendant relies solely on 8 U.S.C. § 1232(b)(3), which requires, subject to exceptions, that the government transfer unaccompanied immigrant children from DHS to ORR custody within "72 hours [of] determining that such child is an unaccompanied alien child."  Mot. at 20.  But that provision does not address—let alone authorize—the forcible, prolonged family separation described and challenged in the Complaint.  Simply put, there is "no statute or regulation mandating the separation of Plaintiffs upon their entry into the country."  *C.M. I*, 2020 WL 1698191, at *3; *Nuñez Euceda*, 2021 WL 4895748, at *3 ("Defendant fails to cite any statute or regulation that required Plaintiff and his children to be separated upon their arrival to the United States."); *A.P.F.*, 492 F. Supp. 3d at 995–96 ("[T]he family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation.") (footnote and citations omitted).  As such, the government's due care exception argument fails to satisfy the first prong of the defense.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

It also fails to meet the second prong.  Indeed, Defendant's motion does not even address the second prong, instead incorrectly stating that, "where a government employee's actions are authorized by statute or regulation . . . the claim must be dismissed for lack of subject matter jurisdiction."  Mot. at 20.  But, for the due care exception to apply, Defendant must show not only that government employees were executing a statute or regulation, but also that those government employees actually "exercis[ed] due care" when doing so.  28 U.S.C. § 2680(a).  "Due care," in turn, "implies at least some minimal concern for the rights of others."  *Hatahley v. United States*, 351 U.S. 173, 181 (1956).

The government does not attempt to argue that its forcible and prolonged separation of Plaintiffs was done with due care.  Nor can it, given its recognition that the family separation policy was a "human tragedy."  Mot. at 7.  Since it is Defendant's burden to prove that the DCE applies, that failure is, on its own, reason enough to reject application of the due care exception to Plaintiffs' claims.  *See Prescott*, 973 F.2d at 702.  Moreover, Plaintiffs allege facts sufficiently showing that Defendant failed to take due care.  *See*, *e.g.*, Compl. ¶¶ 26–27, 35–36 (separating Plaintiffs during the hours-long window that A.F.P. was at a federal court hearing); 27 (failing to provide A.F.P. information regarding J.F.C.'s whereabouts); 42, 46 (refusing to allow A.F.P. to contact J.F.C.); 47–52 (using the separation to coerce A.F.P. into accepting deportation); 28 (allowing Plaintiffs to be separated for 15 months).[5]  As these allegations show, Defendant's employees did not exhibit even a "minimal concern" for Plaintiffs when separating them.  *Hatahley*, 351 U.S. at 181.  The due care exception therefore does not apply.

**C.    Plaintiffs' Claims Satisfy The FTCA's Private Analogue Requirement**

The Court also has subject matter jurisdiction over Plaintiffs' claims because a private person would be liable under Texas law for analogous conduct.

The United States has waived sovereign immunity for tort claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with

---

[5] Although these facts alone are sufficient, other courts' findings regarding the grossly negligent way Defendant implemented its unconstitutional family separation policy is further evidence of lack of due care.  *See*, *e.g.*, *Ms. L. II*, 310 F. Supp. 3d at 1144 (observing that the "unfortunate reality is that . . . migrant children [we]re not accounted for with the same efficiency and accuracy as property").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1  the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Plaintiffs meet

2  their burden of establishing subject matter jurisdiction under the FTCA by "show[ing] that 'a

3  private individual under like circumstances would be liable under state law.'"  *C.M. I*, 2020 WL

4  1698191, at *2 (quoting *United States v. Muniz*, 374 U.S. 150, 153 (1963)).  "Although the

5  federal government 'could never be exactly like a private actor, a court's job in applying the

6  standard is to find the most reasonable analogy.'"  *Dugard v. United States*, 835 F.3d 915, 919

7  (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)).  Thus, the

8  FTCA is broadly understood to waive sovereign immunity for tortious conduct even when the

9  federal government is engaged in "uniquely governmental functions," even though private

10  persons do not conduct the same functions.  *See Indian Towing Co. v. United States*, 350 U.S. 61,

11  64 (1955) (rejecting argument that 28 U.S.C.§ 2674 excludes "liability for negligent performance

12  of 'uniquely governmental functions,'" and noting that "the statutory language is 'under like

13  circumstances,'" not "under the same circumstances").

14      1.      **The Government's Conduct Has Private Analogues in Texas Law.**

15          To determine whether Plaintiffs have adequately pled a private person analogue for the

16  United States' conduct, courts look to "the law of the place where the act or omission occurred."

17  28 U.S.C. § 1346(b)(1); *see also FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).  Texas law

18  applies because Defendant and its officers apprehended, detained, and separated Plaintiffs in

19  Texas.  *See, e.g.,* Compl. ¶¶ 24–28.  This Court has jurisdiction pursuant to the FTCA because a

20  private person may be liable under Texas law for IIED, abuse of process, and negligence under

21  circumstances similar to those alleged here.

22          First, Plaintiffs have sufficiently stated a claim for IIED under Texas law by alleging that

23  Defendant's conduct in forcibly separating Plaintiffs' families and violating their right to family

24  integrity—as well as related conduct associated with Plaintiffs' detention and prolonged

25  separation—was extreme and outrageous and caused Plaintiffs to suffer severe emotional distress.

26  *See*, *e.g.*, Compl. ¶¶ 1–8; *see also Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) ("The

27  … elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally

28  or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1  the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was

2  severe.").  Moreover, courts applying Texas law have allowed IIED claims to proceed in

3  circumstances analogous to those here, where government employees separated family members.

4  *See, e.g.*, *M.D.C.G. v. United States*, 2016 WL 6638845, at \*11–12 (S.D. Tex., Sept. 13, 2016,

5  No. 7:15-CV-552) (allowing an IIED claim to proceed where plaintiffs alleged trauma resulting,

6  in part, from government agents' separation of a mother and daughter for three days, and

7  separation of an accompanying minor for a month).

8       Second, under Texas law, "[a]buse of process is the malicious use or misapplication of

9  process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex.

10  App. 2001).  That is precisely the conduct Plaintiffs allege in their Complaint.  Plaintiffs allege

11  that Defendant used A.F.P.'s prosecution for illegal entry (an act that likely would not have been

12  prosecuted before 2017) as a pretext for separating Plaintiffs.  Compl. ¶¶ 29–37.  Defendant's

13  conduct in this regard was intentional, malicious, and aimed at causing maximal emotional

14  distress for the ulterior purpose of deterring Plaintiffs from seeking asylum and other Central

15  American asylum seekers from coming to the United States. *Id.* ¶ 1–2.  Because a private person

16  can be held liable for abusing process to accomplish an ulterior purpose under Texas law, so too

17  can Defendant.  *See, e.g.*, *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App. 2018) (allowing

18  abuse of process claim to proceed based on allegations of prosecutor's pre-trial misconduct);

19  *Peerless Oil & Gas Co. v. Teas*, 138 S.W.2d 637, 641 (Tex. Civ. App. 1940) (affirming jury

20  verdict for abuse of process arising out of the malicious issuance of a writ of garnishment).

21       Third, Texas has recognized negligence claims in analogous circumstances where a

22  person tasked with the custody of another breached a duty of care.  Under Texas law, private

23  persons may have a duty of care arising from a "special relationship" with individuals in their

24  care and custody, and can be liable for negligence by breaching that duty.  For example, in

25  *Salazar v. Collins*, 255 S.W.3d 191 (Tex. App. 2008), the court found that the "[Texas

26  Department of Criminal Justice] and its officials and employees who exercise supervisory

27  authority in its prisons have a 'special relationship' with TDCJ inmates and thus owe a duty of

28  reasonable care to protect inmates from harm when that harm is reasonably foreseeable." *Id.* at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

203.  In reaching this conclusion, the court recognized Texas' adherence to Section 320 of the Restatement (Second) of Torts, which provides that

> [o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him . . . .

*Id.* at 200 (quoting Restatement (Second) of Torts § 320 (1965)).

Because Texas law clearly recognizes private analogues to Plaintiffs' IIED, abuse of process, and negligence claims, Defendant's challenge on this point must be rejected.  *Accord C.M. I*, 2020 WL 1698191, at *2; *A.P.F.*, 492 F. Supp. 3d at 995; *Nuñez Euceda*, 2021 WL 4895748, at *4.

> ### 2. There Is No Exception to Defendant's Waiver of Sovereign Immunity Based on the Performance of a "Uniquely Governmental Function."

Ignoring *Indian Towing*, Defendant argues that there is no private person analogue to its challenged conduct because "[o]nly the federal government has the authority to enforce federal immigration laws[.]"  Mot. at 21.  This argument should be rejected here, as it was in *C.M. I*, 2020 WL 1698191, at *2, *A.P.F.*, 492 F. Supp. 3d at 994–95, and *Nuñez Euceda*, 2021 WL 4895748, at *4.

As an initial matter, Defendant again inaccurately characterizes "Plaintiffs' alleged harms" as "stem[ming] from the federal government's decision to enforce federal immigration laws."  *Id.*  In fact, Plaintiffs' claims arise from the government's malicious and reckless administration of the family separation policy, for which enforcement of immigration law served only as a paper-thin pretext.  *See, e.g.,* Compl. ¶ 1–8, 29–37; *see also* Exec. Order. 14011, *Establishment of Interagency Task Force on the Reunification of Families,* 86 Fed. Reg. 8,273 (Feb. 2, 2021) (admitting that "our immigration laws were used to intentionally separate children from their parents or legal guardians").  Thus, Defendant's argument that the government has not waived sovereign immunity for "decisions to enforce federal law, as they have no private-person counterpart," Mot. at 21, is misplaced.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1    Even if Plaintiffs' harms were the result of the United States' enforcement of immigration

2    laws, the Court would still have jurisdiction.  In waiving the United States' sovereign immunity

3    from tort claims through the FTCA, "Congress did not require a claimant to point to a private

4    person performing a governmental function."  *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir.

5    2010).  The government's conduct in separating Plaintiffs is analogous to tortious conduct by

6    private individuals even if the government's actions are purportedly related to a "uniquely

7    governmental" function.  *See Sauceda v. United States*, No. 07-CV-2267, 2009 WL 3756703, at

8    *6 (D. Ariz. Nov. 5, 2009) (finding CBP's conduct leading to an arrest analogous to the use of

9    unreasonable force by a private person effecting a citizen's arrest, and that "Arizona law imposes

10   a duty on every person 'to avoid creating situations which pose an unreasonable risk of harm to

11   others'") (quoting *Ontiveros v. Borak*, 136 Ariz. 500, 509 (1983)).

12   None of the cases Defendant cites change the analysis.  *Chen v. United States* is

13   distinguishable because it found there was no private person analogue for claims solely grounded

14   in the government's violation of its own regulations.  854 F.2d 622, 626 (2d Cir. 1988).  None of

15   Plaintiffs' claims are based solely on Defendant's violation of its own regulations.  *Elgamal* and

16   *Bhuiyan* are also inapplicable because both concern the adjudication of immigration petitions,

17   something Plaintiffs do not challenge in this litigation.  *See Elgamal v. United States*, No. 13-CV-

18   867, 2015 WL 13648070 at *5 (D. Ariz. July 8, 2015), *aff'd sub nom Elgamal v. Bernacke*, 714 F.

19   App'x 741 (9th Cir. 2018) (denial of petition for adjustment of immigration status); *Bhuiyan v.

20   United States*, No. 14-0013, 2017 WL 2837023 (D.N. Mar. I. June 30, 2017) (classification of

21   immigration status).

22   Lastly, Defendant contends that this Court should break rank with the other district courts

23   that previously rejected its arguments concerning the private analogue requirement.  *See* Mot. at

24   21 – 22 (arguing that the Court should decline to follow *C.M. I* and *A.P.F.* because those cases

25   relied on Arizona, not Texas analogues).  However, as noted above, there is no justification for

26   this Court to depart from the reasoning employed in *C.M. I* and *A.P.F.* because there are Texas

27   analogues for each cause of action asserted in Plaintiffs' Complaint in this case.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

D.      **The Government's Novel "Systemic" Tort Defense Has No Legal Basis**

The government's next attempt to convince the Court to dismiss Plaintiffs' claims involves making a new rule from whole cloth. The government asserts that "a plaintiff cannot assert 'systemic' claims" against the United States, "but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment." Mot. at 22.

It is not clear what the government means when it refers to "systemic" claims or the source of the supposed prohibition against such claims. The government cites *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), but that case merely holds that a corporation cannot be an "employee" of the government for FTCA purposes, which is not at issue here. *Lee v. United States*, CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), which notes that *Adams* is "not directly on point" to the issues in that case, dismissed a claim where the plaintiff's allegations were "too vague and conclusory" because, among other things, she had not "set forth the alleged acts or omissions of specific federal employees." *Id*. at *5. Neither case says anything about "systemic" litigation.

In any case, the Plaintiffs' Complaint does not assert claims of "generalized negligence" against a federal institution "as a whole." Mot. at 22. To the contrary, Plaintiffs *do* "identify and describe "individual federal employees, acting within the scope of their employment," *id*., who engaged in tortious conduct by, for example, designing the government's practice of separating families at the border, which resulted in A.F.P. being separated from his child, J.F.C., *see* Compl. ¶¶ 1–3, 29–37; intentionally subjecting Plaintiffs and other immigrant families to separation and inhumane conditions for the purpose of deterring them and other immigrants from seeking asylum, *see id*. ¶¶ 1–6, 24–46, 59–73; and using the pain of separation to try to coerce A.F.P. into accepting deportation, *see id*. ¶¶ 47–52. *See also Nurse*, 226 F.3d at 1001 (reversing dismissal of FTCA claims alleging that policymakers "established policies that would result in false arrests and unlawful detentions"). To the extent the government is protesting the Complaint's references to "the United States government," Mot. at 22, no authority supports the proposition that the Court should dismiss an FTCA claim because some allegations reference the government. It would make no sense to do so given that an FTCA plaintiff must "sue[] the United States itself."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

23                    OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1   *García-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *3 (D.P.R.

2   Apr. 23, 2014).  Defendant's argument has no legal basis, and the Court should reject it.

3              **E.      The Independent Contractor Exception Does Not Apply**

4              In its final attempt to skirt liability, Defendant argues that Plaintiffs' fourth cause of action

5   related to J.F.C.'s physical injuries sustained while in ORR custody is barred because it arises out

6   of the negligent actions of a government contractor.  Mot. at 23–25.  This argument, like each of

7   Defendant's prior arguments, has previously been rejected.  In *A.P.F.*, the government similarly

8   relied on the independent contractor exception to argue for the dismissal of claims based on the

9   alleged abuse of immigrant minors while in ORR custody.  *A.P.F.*, 492 F. Supp. 3d at 997.  The

10  district court rejected that argument, correctly reasoning that "[a]ll three of Plaintiffs' causes of

11  action—IIED, negligence, and loss of child's consortium—arise from the government's

12  separation of Plaintiff families."  *Id.* at 998.

13             The same is true here.  J.F.C.'s injuries do not arise solely from the actions of ORR's

14  contractors.  Rather, J.F.C.'s abuse while in ORR custody is among the many harms Plaintiffs

15  suffered because of Defendant's family separation policy, which, as noted above, Plaintiffs have

16  sufficiently alleged was unconstitutional.  J.F.C. would not have been in ORR custody, and so

17  would not have suffered any physical injury, absent Defendant's tortious conduct of separating

18  Plaintiffs in the first place.  Had Defendant not set itself on the course of emotionally torturing

19  immigrant families like Plaintiffs' to deter future asylum seekers from coming to the United

20  States, J.F.C. would have never entered ORR custody, never been flown to a facility in New

21  York, and never been provided with grossly negligent supervision.

22             Because Plaintiffs challenge Defendant's conduct in exposing J.F.C. to abuse in ORR

23  custody as a direct and proximate result of its family separation policy, and not because of the

24  conduct of independent contractors, the independent contractor exclusion does not apply.

25  //

26  //

27  //

28  //

**V.      CONCLUSION**

      For all these reasons, Defendant's Motion to Dismiss should be denied.

      Alternatively, to the extent the Court is inclined to grant Defendant's Motion to Dismiss as to any cause of action, Plaintiffs request leave to amend.

Dated: March 28, 2022                                    Respectfully Submitted,

                                                **MORGAN, LEWIS & BOCKIUS LLP**

                                By:   */s/ Kent W. Kraushaar*

                                    Susan Baker Manning
                                    Lisa R. Weddle
                                    Kent W. Kraushaar

                                    *Attorneys for Plaintiffs A.F.P and J.F.C.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

25

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG

1

## CERTIFICATE OF SERVICE

2      I hereby certify that a true and correct copy of the foregoing was electronically filed with

3  this Court's CM/ECF system on March 28, 2022, which will send notice of electronic filing to all

4  counsel of record who has consented to electronic notification.

5

6  Dated:  March 28, 2022

7      */s/ Kent W. Kraushaar*
       Kent W. Kraushaar

8      **MORGAN, LEWIS & BOCKIUS LLP**
       300 South Grand Avenue

9      Twenty-Second Floor
       Los Angeles, CA 90071-3132

10     Tel:    +1.213.612.2500
       Fax:    +1.213.612.2501

11     kent.kraushaar@morganlewis.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO DISMISS
1:21-CV-00780-DAD-EPG