PHILLIP A. TALBERT
United States Attorney
DAVID T. SHELLEDY
Civil Division Chief
VICTORIA L. BOESCH
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.F.P. and J.F.C.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | CASE NO. 1:21-cv-00780-DAD-EPG<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS<br><br>Hearing taken off calendar |

**TABLE OF CONTENTS**


A. On this Motion to Dismiss for Lack of Jurisdiction, Allegations Contradicted by Evidence Are Not Presumed True. ....1

B. Plaintiffs' Claims Are Barred by the Discretionary Function Exception. ....2

1. First Prong: No Mandatory Directive Prescribed a Specific Course of Action Contrary to Any Challenged Government Conduct. ....2

a. Plaintiffs Do Not Rebut that the Government's Decisions on Detention and Separation Involved Discretionary Judgments. ....3

b. Plaintiffs Cannot Circumvent the DFE Simply by Alleging a Constitutional Violation. ....5

2. Second Prong: The Decision to Detain Plaintiffs Separately Was Susceptible to Policy Analysis. ....9

3. Plaintiffs' Allegations Concerning Conditions of Confinement Should Be Dismissed. ....11

C. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Also Barred by the FTCA's Exception for Actions Taken while Reasonably Executing the Law. ....12

D. There Is No Private Person Analogue. ....12

E. Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims. ....13

F. Plaintiffs' Claim of Negligence after JFC Was Transferred to ORR Is Barred by the FTCA's Independent Contractor Exclusion. ....13

CONCLUSION ....14

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ........ 1, 9, 14

*Adams v. United States*,
420 F.3d 1049 (9th Cir. 2005) ........ 13

*Aragon v. United States*,
146 F.3d 819 (10th Cir. 1998) ........ 5

*Bhuiyan v. United States*,
772 F. App'x 564 (9th Cir. 2019) ........ 12, 13

*Blanco Ayala v. United States*,
982 F.3d 209 (4th Cir. 2020) ........ 3

*Bryan v. United States*,
913 F.3d 356 (3d Cir. 2019)........ 7

*Butz v. Economou*,
438 U.S. 478 (1978)........ 6

*C.M. v. United States*,
No. 2:19-cv-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. March 30, 2020)........ 1, 9

*Camreta v. Greene*,
563 U.S. 692 (2011)........ 9

*Comm. of Cent. Am. Refugees v. I.N.S.*,
795 F.2d 1434 (9th Cir. 1986) ........ 3

*Cope v. Scott*,
45 F.3d 445 (D.C. Cir. 1995)........ 5

*Daniels v. Williams*,
474 U.S. 327 (1986)........ 5

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ........ 3

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ........ 1

*Elgamal v. Bernacke*,
714 F. App'x 741 (9th Cir. 2018) ... 12

*Elgamal v. United States*,
No. 13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ... 12

*FDIC v. Meyer*,
510 U.S. 471 (1994) ... 13

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) ... 4

*Galvin v. Hay*,
374 F.3d 739 (9th Cir. 2004) ... 7, 8

*GATX/Airlog Co. v. United States*,
286 F.3d 1168 (9th Cir. 2002) ... 9

*Harrison v. Fed. Bureau of Prisons*,
464 F. Supp. 2d 552 (E.D. Va. 2006) ... 11

*Hart v. City of Little Rock*,
432 F.3d 801 (8th Cir. 2005) ... 6

*J.S.R. by and through J.S.G. v. Sessions*,
330 F. Supp. 3d 731 (D. Conn. 2018) ... 9

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't,*
319 F. Supp. 3d 491 (D.D.C. 2018) ... 8, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ... 1

*Lam v. United States*,
979 F.3d 665 (9th Cir. 2020) ... 9

*Lane v. United States*,
918 F. Supp. 864 (E.D. Pa. 1996) ... 5

*Lee v. United States*,
No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ... 13

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009) ... 7

*Mazur v. United States*,
957 F. Supp. 1041 (N.D. Ill. 1997) ... 13

*McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994) ........ 7

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir.) ........ 6

*Ms. L. v. U.S. Immigr. & Customs Enf't,* 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ........ 8

*Ms. L. v. U.S. Immigr. & Customs Enf't,* 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ........ 8

*Nanouk v. United States*, 974 F.3d 941 (9th Cir. 2020) ........ 4, 5

*Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. April 27, 2021) ........ 1, 9

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) ........ 7, 8

*Pena Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020) ........ 1, 3, 10

*Reyna as first friend of J.F.G. v. Hott*, 921 F.3d 204 (4th Cir. 2019) ........ 8

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ........ 1

*Sea Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997) ........ 12

*Sorrels v. McKee*, 290 F.3d 965 (9th Cir. 2002) ........ 5

*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) ........ 11

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ........ 6

*United States v. Dominguez-Portillo*, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ........ 4, 8

*United States v. Olson*, 546 U.S. 43 (2005) ........ 13

*United States v. Varig Airlines*,
467 U.S. 797 (1984) .......... 10

*United States v. Vasquez-Hernandez*,
314 F. Supp. 3d 744 (W.D. Tex. 2018) .......... 8

*Washington v. Reno*,
35 F.3d 1093 (6th Cir. 1994) .......... 11

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) .......... 6

## Federal Statutes

6 U.S.C. § 279(a) .......... 4

6 U.S.C. § 279(b)(1) .......... 14

6 U.S.C. § 279(b)(1)(A) .......... 4

6 U.S.C. § 279(b)(1)(C) .......... 4

8 U.S.C. § 1225 .......... 3

8 U.S.C. § 1226(a) .......... 3

8 U.S.C. § 1231(a)(2) .......... 12

8 U.S.C. § 1231(g)(1) .......... 3

8 U.S.C. § 1232(b)(1) .......... 14

8 U.S.C. § 1232(b)(3) .......... 10, 12

8 U.S.C. § 1232(c)(2)(A) .......... 4, 10

8 U.S.C. § 1325 .......... 3

8 U.S.C. § 1325(a)(1) .......... 3

8 U.S.C. § 1326 .......... 3

Plaintiffs' opposition fails to show that the Federal Tort Claims Act or any other statute waives sovereign immunity for the claims in this case, which explicitly challenge policy decisions of the Executive Branch. They rely primarily on three decisions of other district courts that are neither binding nor persuasive—*A.P.F. v United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), *C.M. v. United States*, No. 2:19-cv-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. March 30, 2020), and *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. April 27, 2021)—while largely ignoring *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020), which correctly recognized that decisions resulting in the challenged separation of noncitizen families who entered the United States illegally fall within the discretionary function exception ("DFE"). The Complaint should be dismissed for lack of jurisdiction.

### A. <u>On this Motion to Dismiss for Lack of Jurisdiction, Allegations Contradicted by Evidence Are Not Presumed True.</u>

Plaintiffs assert that the Court must "tak[e all their] allegations as true and draw[] all reasonable inferences from the complaint in [their] favor." Plf. Opp. at 6 (quoting *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005)). Not so. The *Doe* opinion quoted by plaintiffs addressed "a motion to dismiss for failure to state a claim." *Id.* at 1062. On this motion to dismiss *for lack of jurisdiction*, "[n]o presumptive truthfulness attaches to plaintiff's allegations." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). Jurisdiction is determined by the evidence on file, and "the party asserting subject matter jurisdiction has the burden of proving its existence." *Id.*; *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The government filed declarations, transcripts, and other exhibits with its motion (collectively, ECF No. 22-2) showing, contrary to the allegations of the Complaint:

(1) that plaintiff AFP knowingly and voluntarily pleaded guilty to illegal entry, after being advised of his rights and with the advice and assistance of counsel and an interpreter (Exhibits B & C);

(2) that AFP's removal could not have violated asylum provisions of the INA or a court order in *Ms. L v. U.S. Immigration and Customs Enforcement*, Case No. 18-cv-428 (S.D. Cal.), and was in accordance with AFP's voluntary waiver of any asylum-like relief and his express request, on

(3) the record in immigration court, to be returned to Honduras "at once" while plaintiff JFC remained in New York, where AFP "kn[e]w [his] son would be protected" (Exhibit G);

(4) that AFP returned from Honduras ten months later and was paroled into the United States pending further immigration proceedings, and the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") reunited plaintiffs just a little over a week after AFP returned (Exhibit D; Complaint ¶ 58);

(5) that, while in the care and custody of ORR, JFC was not held in any "detention center"[1] but rather was provided shelter on the open campus of a private charitable organization and, later, in the home of a foster family (Exhibits D & F); and

(6) that all of plaintiffs' allegations of negligence after JFC was transferred to ORR refer to acts or omissions of an independent contractor, not government employees for which the United States may be liable under the FTCA (Exhibits F, F-1 & F-2).

Plaintiffs filed no evidence. The government's evidence establishing the foregoing facts is therefore uncontradicted.

### B. Plaintiffs' Claims Are Barred by the Discretionary Function Exception.

#### 1. First Prong: No Mandatory Directive Prescribed a Specific Course of Action Contrary to Any Challenged Government Conduct.

Plaintiffs allege that they were forcibly separated after illegally crossing the U.S.-Mexico border in January 2018—months before issuance of the Zero-Tolerance Policy the following April. They further allege that plaintiff JFC was transferred to a "detention center" in New York, while AFP was prosecuted for illegal entry; detained in secure, adult detention facilities; and then removed from the United States without JFC. While plaintiffs attempt to reframe these allegations to avoid application of the DFE, as to the conduct pled in the Complaint, the government had discretion to act as it did at all relevant times from plaintiffs' illegal entry through their detention and separation. Plaintiffs' opposition fails to rebut this discretion by demonstrating that a mandatory directive specifically prescribed a different course of action.

[1] Complaint ¶¶ 62, 64, 65, 68, 72, 73.

a. **Plaintiffs Do Not Rebut that the Government's Decisions on Detention and Separation Involved Discretionary Judgments.**

Plaintiffs have not shown that government officials lacked discretion on the key decision points at issue, much less identified a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and conduct that violates this mandatory and specific directive, as required to avoid the DFE. *See*, *e.g.*, *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

First, plaintiffs cannot refute that the government possesses express statutory authority to detain noncitizens who illegally enter the United States, 8 U.S.C. §§ 1225, 1226(a), and to "arrange for appropriate places of detention for aliens pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing that in making decisions about investigation and detention, "DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability"); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]."). Nor can plaintiffs contest that the government had discretion to prosecute AFP for illegal entry in violation of 8 U.S.C. § 1325(a)(1), and therefore to detain him for criminal prosecution.[2]

Although the separation at issue in this case occurred before the issuance of the Zero-Tolerance Policy, decisions concerning prosecution and detention are quintessential discretionary policy decisions subject to the DFE. *See Peña Arita*, 470 F. Supp. 3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected discretionary decisions" that resulted in family separations and that its use of the phrase "to the extent practicable" indicated "essentially discretionary judgment"). As explained more fully in our opening brief, the Flores Agreement does not require release of an adult parent, compel release of a child to a parent that remains in custody, mandate that parents be housed with a child, or prescribe that parents are entitled to be housed with their children in immigration

---

[2] Plaintiffs also do not contest that AFP had previously been ordered removed and thus could have been prosecuted under 8 U.S.C. § 1326 for felony re-entry. That he was charged with the lesser offense of illegal entry under 8 U.S.C. § 1325 as a matter of prosecutorial discretion is of no moment.

detention. *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016); *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at *9, *14-15 (W.D. Tex. Jan. 5, 2018). Further, ORR, which is statutorily charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status,"[3] must exercise discretion to place unaccompanied children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

The only purported limitations on discretion identified in plaintiffs' opposition are substantive due process and a U.S. Customs and Border Protection ("CBP") policy that states, under the heading General Standards, "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation."[4] Plaintiffs' due process argument is discussed in the next section. With respect to the CBP policy, it does not prescribe a specific course of action, as required to overcome the DFE, because it expressly preserves discretion *not* to maintain family unity due to competing policy considerations when (a) maintaining family unity is not "operationally feasible," or (b) a "legal requirement" provides otherwise, or (c) "an articulable safety or security concern . . . requires separation." The policy itself thus confirms that CBP must balance family unity against the perils of detaining minors with adults—some of whom may be charged with crimes—and the operational difficulties of maintaining safety and security in detention and processing centers.

Moreover, even if the policy itself did not identify these competing policy concerns, the qualifying language that family unity is to be maintained to the "extent operationally feasible" would preserve sufficient discretion to satisfy the first prong of DFE analysis. As the Ninth Circuit explained in *Nanouk v. United States*, 974 F.3d 941 (9th Cir. 2020), a policy that expressly applies only when

[3] 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)).

[4] U.S. Customs & Border Protection, National Standards on Transport, Escort, Detention, and Search 4 (Oct. 2015), available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policyoctober2015.pdf.

practical, practicable, or feasible necessarily preserves discretion to decide whether the prescribed action should be followed in the circumstances at hand:

> the provision at issue here required only that Air Force personnel "[m]ake all *practical* efforts" to avoid exposing people to chemicals that could be hazardous to health. That qualifier necessarily left Air Force personnel with discretion to decide whether complying with the directive was feasible under the circumstances at hand. *See Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998) (the phrase "as may be practicable" conferred discretion at step one); *Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995) (same for the phrase "to the extent practicable"); *see also Gonzalez*, 814 F.3d at 1030 (the phrase "whenever feasible" conferred discretion at step one).

*Id.* at 946 (emphasis in original). *See also Lane v. United States*, 918 F. Supp. 864, 870 (E.D. Pa. 1996) (explaining that a statute requiring a government official to carry out a task "to the maximum extent feasible" "directs the [official] to exercise his judgment" and balance competing policies). Thus, the CBP policy on which plaintiffs rely itself confirms that there was ample discretion for the DFE to apply.[5]

#### b. **Plaintiffs Cannot Circumvent the DFE Simply by Alleging a Constitutional Violation.**

Plaintiffs argue that the mere allegation of a constitutional violation—here, "the substantive due process right to family integrity"—precludes application of the FTCA's discretionary function exception. Plf. Opp. at 8. This argument fails for several reasons.

First, negligence cannot establish a deprivation of liberty violating the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986) ("[L]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by [a lack of due care] is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."); *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) ("mere

---

[5] The Complaint alleges that AFP's removal violated two other mandatory directives: "a federal court order in *Ms. L v. U.S. Immigration and Customs Enforcement*, Case No. 18-cv-428 (S.D. Cal.)" and "asylum provisions of the [INA]." Complaint ¶ 55. Both assertions are rebutted in our opening brief at 14-15, explaining: (1) that no injunction was entered in *Ms. L* until June 26, 2018—more than a month after AFP's removal, and (2) that, being subject to a reinstated removal order, AFP had no right to asylum under the INA but could only seek withholding of removal, and he expressly withdrew his request for withholding during an immigration court hearing. Plaintiffs appear to have abandoned these claims, as their opposition does not attempt to defend them.

negligence on the part of prison officials is not actionable as a due process violation"). Indeed, the Ninth Circuit has recognized that even where a wrongful family separation is alleged, "negligence is insufficient to prove a due process violation." *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir.), *cert. denied*, 142 S. Ct. 402 (2021). *See also Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004) ("a due process claim predicated upon the violation of a parent's liberty interest in the companionship of his child requires a showing of more than negligence"); *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) ("Mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights."). Thus, plaintiffs' constitutional argument cannot save their negligence claims (the Third and Fourth Claims for Relief).

Further, the DFE is not precluded by every allegation of unlawful or unconstitutional conduct. Instead, a plaintiff must show that the government official's discretion was limited by a clearly established right, accompanied by plausible assertions that the right was violated. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for discretionary acts would not be vitiated simply because alleged conduct might later be held unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits"). The Court held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court explained that were it otherwise, as relevant to the case at bar, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

Since *Butz*, the Supreme Court has held that government officials who exercise discretionary functions are, under certain circumstances, entitled to qualified immunity in damages suits for violating the Constitution while exercising their discretion. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

Plaintiffs acknowledge (Plf. Opp. at 12) that in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), the Third Circuit held that the plaintiffs' FTCA claim must fail under the DFE, even if the challenged conduct violated the Fourth Amendment, because it "did not violate *clearly established* constitutional rights." *Id.* at 364 (emphasis added). Similarly, in *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994), the court concluded that the DFE barred the plaintiff's FTCA claims even though he alleged that the actions of federal agents violated the Fourth Amendment. *Id.* at 593 ("[T]he statutory or constitutional mandate that eliminates discretion must be specific and intelligible so that the officer[] knows or should know he loses discretion when the particular circumstances arise which the mandate controls."); *id.* n.15 ("This requirement is not unlike the *Harlow* criteria for qualified immunity in constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right."). To similar effect, in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), the court held that the DFE did not apply to withholding of exculpatory information, which constituted "a clear violation of due process." *Id.* at 101-02.

Plaintiffs assert that *Bryan* is contrary to binding Ninth Circuit authority, citing *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000), and *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004). But neither *Nurse* nor *Galvin* addressed whether rights that prescribe no identifiable course of conduct for a government official to follow can eliminate discretion and thus preclude application of the DFE. In *Nurse,* the court did not even rule that the DFE was inapplicable; it only observed that the challenged conduct "*may have been* non-discretionary." *Id.* at 1002 (emphasis added). In addition, the court implied that some rights may not be clearly established, by expressly reserving decision on "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor." 226 F.3d at 1002 n.2.

In *Galvin*, the court stated that the DFE did not apply to FTCA claims for false arrests during dispersal of a demonstration in violation of the First Amendment, which a separate part of the opinion, discussing *Bivens* claims, found was not clearly established for purposes of qualified immunity. But the discussion of DFE in *Galvin* was dictum because the court's judgment, affirming dismissal of the FTCA claims, rested on different grounds. 374 F.3d at 758. The court held that the arrests were privileged under state tort law because "the defendants' permit denial was not a violation of *clearly established*

*law*" and therefore "the officers had reasonable cause to believe the arrest was lawful." *Id.* (emphasis added, internal quotation marks omitted).

Nothing in the *Galvin* opinion suggests that the court considered the level of textual specificity or settled precedent required for a constitutional right to eliminate discretion for purposes of the DFE. The opinion does not address this question. Instead, without suggesting any intended departure, it quotes in part footnote 2 of *Nurse* (which expressly reserved the issue) for the more general proposition that "'governmental conduct cannot be discretionary if it violates a legal mandate . . . . [T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply.'" *Galvin*, 374 F.3d at 758. It would be a mistake to consider *Galvin*'s dictum dispositive of such an important question that the court did not identify, address, or apparently consider.

The question here is whether, in January 2018, there was a clearly established substantive due process right to family integrity precluding separation of parents and children who were apprehended after illegally crossing the border between ports of entry, where the parent had been removed for illegal entry three times before, was criminally charged, pleaded guilty, and then was detained for removal. There was no such clearly established right. *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019) ("we, like the district court, have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at *6 (W.D. Tex. Jan. 5, 2018) (rejecting due process claim based on right to family unity and explaining that "case law provides little guidance on how such parental rights are actually manifested when a parent charged with a petty misdemeanor illegal entry offense is separated from their child who allegedly accompanied them across the border"), *aff'd sub nom. United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019).

Plaintiffs rely on decisions of three district judges addressing family separations that, unlike the separation in this case, occurred under the Zero-Tolerance Policy: (1) the June 6, 2018, and June 26, 2018, decisions in the *Ms. L.* litigation (*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ("*Ms. L I*"); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ("*Ms. L II*"); (2) the July 19, 2018, decision in *Jacinto-Castanon de Nolasco v. U.S. Immigr. &*

*Customs Enf't*, 319 F. Supp. 3d 491 (D.D.C. 2018); and (3) the July 13, 2018, decision in *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). As an initial matter, decisions of district judges cannot demonstrate that a right is clearly established. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("decisions of a federal district court judge are not binding precedent in either a different judicial district, the same judicial district, or even on the same judge in a different case"). In addition, all of the decisions relied upon by plaintiffs were rendered *after* the separation in this case and therefore cannot show that any right was clearly established at the time of the challenged conduct. Indeed, by the time those decisions were rendered, plaintiff AFP had already been removed to Honduras in accordance with his own request.

Plaintiffs' reliance on *C.M. v. United States*, No. CV-1, 9-5217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020), *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), and *Nunez Euceda v. United States*, No. 2:20-cv-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021), is equally misplaced. By the time those decisions were rendered, all alleged wrongdoing in this case was long past and plaintiffs had been reunited.

Finally, plaintiffs are incorrect in asserting that a substantive due process right to family integrity is implicated by allegations concerning the conditions of their confinement rather than their separation itself. Plf. Opp. at 8 (referring to "cruel and inhumane treatment" and citing, inter alia, Complaint ¶¶ 38-46, 56-73). But plaintiffs have not demonstrated how their conditions of confinement implicate a right to family unity or that they violated a clearly established constitutional right.

### 2. Second Prong: The Decision to Detain Plaintiffs Separately Was Susceptible to Policy Analysis.

Plaintiffs' argument that the government's challenged actions "were not grounded in policy" (Plf. Opp. at 14) ignores the controlling legal principles and their own allegations. Contrary to plaintiffs' argument, the DFE does not require a showing that conduct was actually grounded in policy but only that it be "*susceptible* to policy analysis." *Lam v. United States*, 979 F.3d 665, 674-75 (9th Cir. 2020) (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("The decision 'need not *actually* be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (emphasis in original)). But here, the core claims of the

Complaint explicitly challenge a policy formally adopted by the Executive Branch: "This case is about [an] unprecedented *policy* issued at the highest levels of the United States government to separate asylum-seeking parents and children." Complaint ¶ 1 (emphasis added). *See also id.* ¶ 2 (challenged actions and policy were intended to deter immigration), ¶ 29 ("A.F.P.'s prosecution was part of a policy launched by the Department of Justice"). Thus, plaintiffs' argument is contradicted by the central allegations of their own Complaint.

Plaintiffs' assertion that "the United States was not enforcing federal law when it separated Plaintiffs" (Plf. Opp. at 14) is incorrect. The Complaint itself alleges that plaintiffs' separation resulted from criminal prosecution of AFP's illegal-entry offense. *Id.* ¶¶ 29-36. As further explained in our opening brief, plaintiffs' separation was a consequence of AFP being held in secure, adult detention—first for criminal prosecution of his fourth illegal entry (which he admitted by pleading guilty[6]) and later for removal on reinstated removal orders. Separation during criminal custody and administrative detention implicates both family unity and competing policy considerations such as the need to secure adult offenders and the need to protect minors who might be exposed to harm if held with a population of adult offenders. In addition, when secure, adult custody and detention rendered AFP unavailable to provide care and custody for his son, the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), mandated that JFC be transferred to ORR and placed "in the least restrictive setting that [was in his] best interest." 8 U.S.C. §§ 1232(b)(3), (c)(2)(A). This language of the TVPRA expressly requires consideration of competing policies.

Because there are competing policies, there is ample room to disagree with prosecuting federal immigration crimes and detaining illegal-entry offenders for removal when the consequence is separation of parents from their children. But judicial second-guessing of such policy choices in tort suits is what Congress adopted the DFE to prevent. *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). *See Peña Arita*, 470 F. Supp. 3d at 686-87 (explaining that implementation of policies resulting in separations is discretionary conduct grounded in social, economic, and political policy). *See also* cases cited in our opening brief at 13-14. Jurisdiction is therefore barred.

---

[6] Tr. of Initial Appearance and Guilty Plea (Exhibit C).

**3. Plaintiffs' Allegations Concerning Conditions of Confinement Should Be Dismissed.**

Plaintiffs assert that the government has not adequately explained how various conditions of confinement are susceptible to policy analysis, specifically: cramped and cold conditions, insufficient food and water, verbal abuse and taunting, lack of warning, and insufficient opportunities to communicate with each other by telephone. Plf. Opp. at 15. According to their opposition, they experienced these conditions "both before and after being separated." *Id.* But the Claims for Relief set forth in the Complaint are about family separation—not conditions of confinement. The claims are: "Intentional Infliction of Emotional Distress" resulting from "implementation of an unprecedented government policy of forced separation" (First Claim for Relief), Abuse of Process (Second Claim for Relief), "Negligence – Family Separation" (Third Claim for Relief), and "Negligence – J.F.C.'s Time in ORR Custody" (Fourth Claim for Relief). Dismissal is required because the government has demonstrated that those claims are beyond the Court's jurisdiction. There is no requirement to show the same for every factual allegation in the Complaint.

Nonetheless, our opening brief explains that courts have repeatedly held that claims challenging conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. *See* ECF No. 22-1 at 17-18 & n.8. In particular, the amount of information provided to AFP, and his ability to communicate with JFC by telephone, implicate the discretionary decision to hold him in criminal custody and in secure, adult immigration detention facilities. How much and when to furnish information to detainees, as well as when to permit phone use, implicate competing security considerations, and thus fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."). Plaintiffs make no argument that any mandatory directive required different conditions of confinement. Therefore, the DFE applies.

**C. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Also Barred by the FTCA's Exception for Actions Taken while Reasonably Executing the Law.**

Plaintiffs argue that the government has only shown that it was "authorized" by statute to separate them, and not that it was required to do so. On the contrary, as explained in our opening brief, the TVPRA required the government to transfer JFC to ORR within 72 hours after determining that he was "unaccompanied." 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that AFP was unable to provide care and physical custody for JFC, and thus that he was unaccompanied within the meaning of the statute, because it had previously made the discretionary decisions to refer AFP for criminal prosecution and to detain him in a secure immigration detention facility. Once these determinations were made, the TVPRA required that JFC be transferred to ORR. Carrying out these statutory commands cannot form the basis of an FTCA claim.

**D. There Is No Private Person Analogue.**

Plaintiffs' arguments on the private analogue requirement are incorrect. Jurisdiction is not barred merely because immigration enforcement is "a uniquely government function" (Plf. Opp. at 19), but because private persons in Texas cannot be held liable for anything remotely similar. Plaintiffs identify no case in which a private person in Texas was or could be held liable in tort (1) for complying with a federal statutory mandate, such as the statutes here requiring detention of a noncitizen subject to prior removal orders who nonetheless illegally entered the United States again[7] and to transfer a minor to the separate custody of ORR because his parent was unavailable to provide for his care or custody because he was detained for criminal prosecution and removal; (2) for taking other actions that are expressly authorized by federal statute; or (3) for prosecuting federal criminal and civil immigration laws.[8] This conduct is unlike anything private persons do or for which they can be held liable.[9] The

---

[7] *See* 8 U.S.C. § 1231(a)(2) (providing that the Attorney General "shall detain" noncitizens subject to removal orders during the removal period).

[8] See 8 U.S.C. § 1232(b)(3) (discussed above at 11).

[9] *Cf.*, *e.g.*, *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v.*

Texas cases cited in plaintiffs' opposition imposed liability on "government employees" and "government agents" who separated family members, for "a prosecutor's pre-trial misconduct," and on "the Texas Department of Criminal Justice and its officials and employees" (Plf. Opp. at 22), not private parties.

It is settled law that the private-analogue requirement cannot be satisfied by state-law liability of public entities or officials, even for claims challenging activities of the United States that private parties do not perform. *United States v. Olson*, 546 U.S. 43, 46 (2005). Plaintiffs' argument therefore fails.

**E. Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.**

Plaintiffs' allegations concern purportedly unconstitutional actions by the government writ large, not actions by individual government employees. Under well-established law, the United States has not waived its sovereign immunity for constitutional tort claims, *FDIC v. Meyer*, 510 U.S. 471, 477 (1994), and under the principles of *Lee* and *Adams*, plaintiffs' allegations are too vague and conclusory to impose liability +under the FTCA for the actions of any individual federal employees. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020); *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005).

**F. Plaintiffs' Claim of Negligence after JFC Was Transferred to ORR Is Barred by the FTCA's Independent Contractor Exclusion.**

Plaintiffs' only response to the independent contractor defense is that the United States is liable for wrongfully separating plaintiffs. Plf. Opp. at 24. But that is not the claim addressed by the defense. On the contrary, separate and apart from plaintiffs' claim for "Negligence – Family Separation" (Complaint at 17), their Fourth Claim for Relief seeks to impose liability for "Negligence – JFC's Time in Custody" (Complaint at 18) because of allegedly "Inhumane Conditions and Emotional Abuse . . . in New York Detention Centers" (*id.* at 13) and because "Detention Staff Neglected J.F.C.'s Health" (*id.* at 15). All of this is based on allegations that "detention center . . . staff" mistreated JFC (*id.* ¶¶ 62-72) and

---

*United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D. Ill. 1997) (in matters relating to naturalization of noncitizens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").

plaintiffs' meritless assertion that ORR is "legally responsible" for any failure of care by virtue of two provisions of the TVPRA (*id.* ¶ 62 (citing 6 U.S.C. § 279(b)(1) and 8 U.S.C. § 1232(b)(1)).

For this reason, plaintiffs' reliance on *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), is misplaced. The court in *A.P.F.* ruled that the independent contractor exclusion was inapplicable because the complaint in that case sought damages for harms allegedly suffered during foster care solely because those harms were proximately caused by alleged wrongdoing of government employees and not based on vicarious liability for alleged negligence of contractors. *Id.* at 998. Here, plaintiffs' claim is expressly based on vicarious liability.

Plaintiffs' opposition does not acknowledge this claim, much less attempt to defend it. Thus, they do not contest that Children's Village (inaccurately referred to in the Complaint as the "detention center") is an independent contractor whose alleged negligence cannot be a basis for holding the United States liable. *See* Plf. Opp. at 24. Nor do they contend that any employee of the United States negligently selected or negligently supervised Children's Village. *Id.* The evidence filed by the government on these points is thus undisputed. Therefore, as fully explained in our opening brief at 23-25, the Fourth Claim for Relief should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in our opening brief, the Complaint should be dismissed.

Dated: April 7, 2022

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By: [signature]
DAVID T. SHELLEDY
Civil Division Chief
VICTORIA L. BOESCH
Assistant U.S. Attorney